[No. 68602-5.  En Banc.]
Argued November 30, 2000.    Decided June 28, 2001.

SKAMANIA COUNTY, *Appellant*, v. THE COLUMBIA RIVER GORGE COMMISSION, *Respondent*, FRIENDS OF THE COLUMBIA GORGE, *Respondent/Intervenor*.

BRIAN BEA, ET AL., *Appellants*, v. THE COLUMBIA RIVER GORGE COMMISSION, *Respondent*.

---

32

*Bradley W. Anderson, Prosecuting Attorney for Skamania County*; *Jerome L. Hillis, Lynne M. Cohee,* and *Amy C. Williams-Derry* (of *Hillis Clark Martin & Peterson*); *John M. Groen* (of *Groen, Stephens & Klinge, L.L.P.*); and *Timo-*

*thy M. Harris* (of *Pacific Legal Foundation*), for appellants.

*Hardy Myers, Attorney General for the State of Oregon,* and *Michael D. Reynolds, Assistant; Christine O. Gregoire, Attorney General for the State of Washington,* and *Jonathon A. Gurish, Assistant;* and *Gary K. Kahn* (of *Reeves, Kahn & Eder*) (*Bart A. Brush,* of counsel), for respondents.

*Kate C. Pflaumer, United States Attorney,* and *Francis J. Duskin, Assistant,* on behalf of the United States, amicus curiae.

*Jeffrey M. Eustis, Greg Overstreet, Patrick W. Henry,* and *Sandra N. Duffy,* amici curiae.

ALEXANDER, C.J. — More than a year after Skamania County approved Brian and Jody Bea's application to build a residence and accessory structures on their property in the Columbia River Gorge National Scenic Area (Scenic Area), the Columbia River Gorge Commission (Gorge Commission) determined that the County's decision to approve their application ran counter to the Columbia River Gorge National Scenic Area Act (Act), the Gorge Commission's "Management Plan" for the Scenic Area, and Skamania County's Scenic Area Ordinance (Ordinance). Consequently, it commenced an "enforcement action" against the County seeking to compel the County to nullify its decision and issue a new decision requiring siting of the residence and other structures at an alternate site. Following a "contested case" hearing before the Gorge Commission, the Commission concluded that the County's decision approving the Beas' application violated the Act, the Management Plan, and the Ordinance, and it directed the County to: (1) order the Beas to stop construction on the site; (2) invalidate its earlier decision approving the Beas' application; and (3) issue a new decision that would comply with the Act, the Management Plan, and the Ordinance by, among other

things, requiring location of the Beas' residence and other buildings at alternative sites on the parcel. Skamania County and the Beas subsequently appealed the Commission's findings of fact, conclusions of law, and order to the Skamania County Superior Court. That court affirmed the Gorge Commission. We, thereafter, granted a petition by the Beas and Skamania County to directly review the superior court's decision. The principal issue before us is whether the Gorge Commission had the authority to invalidate the County's land use decision, notwithstanding its failure to appeal the County's decision. We agree with Skamania County and the Beas that the Gorge Commission's action was without authority of law and, therefore, reverse the superior court.

## I. FACTS

### A. The Columbia River Gorge National Scenic Area Act and the Skamania County Ordinance

In 1986, Congress passed the Columbia River Gorge National Scenic Area Act. 16 U.S.C. §§ 544-544p. The Act established the Columbia River Gorge National Scenic Area in a portion of Washington and Oregon.[1] It authorized the two states to enter into a compact incorporating the Act and creating the Columbia River Gorge Commission for the purpose of administering the Act.[2] Washington and Oregon thereafter negotiated such a compact and, in 1987, the legislature of each state ratified the Columbia River Gorge Compact.

---

[1] The Scenic Area consists of land in six counties in the Columbia River Gorge. Three of the counties are in Washington (Clark, Klickitat, and Skamania), and three are in Oregon (Hood River, Multnomah, and Wasco).

[2] The Gorge Commission has 12 voting members and 1 ex officio member. The governors of Washington and Oregon each appoint three Commission members who must be residents of their respective states. At least one of each governor's appointees must be a resident of the Scenic Area. The governing body of each of the six counties in the Scenic Area appoints one of its residents to the Commission. The secretary of the Department of Agriculture appoints the ex officio, nonvoting member. That person must be an employee of the United States Forest Service.

The Act required the Gorge Commission to establish a Management Plan for the Scenic Area, which the Commission is to use in administering nonfederal lands within the area. The Act also required each of the six counties within the Scenic Area to adopt a local land use ordinance, which was to be consistent with the Management Plan and subject to the Gorge Commission's review and approval.[3] In 1993, Skamania County dutifully adopted its Ordinance and the Gorge Commission reviewed and approved it.

The Ordinance requires applicants for land uses within the Scenic Area to submit their applications to the County's Department of Planning and Community Development (Department). When an application is filed, notice of the application must be given by the Department to all "interested parties,"[4] the Gorge Commission, the United States Forest Service, owners of property within 500 feet of the subject parcel, Indian Tribes listed in the Skamania County Code (SCC), and any other person or entity who has requested notice or whom the director has determined should receive notice of the particular application. The notice must include the name of the applicant, the location of the subject property, a brief description of the proposed action, the date by which the Department director will make a preliminary decision, and a statement that the Department will receive written comments concerning the application for 21 days from the date that the notice is mailed. Following the comment period, the Department director must issue a decision with findings of fact and conclusions of law. The director may impose any conditions that he or she determines are necessary to ensure that the

---

[3] During the time between the effective date of the Act and the adoption by each individual county of its own local land use ordinance, the Gorge Commission was to review all land use applications in the Scenic Area under interim guidelines that had been promulgated by the secretary of the Department of Agriculture. The Act provides that if a county fails to adopt a local land use ordinance, or if the Gorge Commission does not approve an ordinance submitted by a county, the Gorge Commission must adopt its own land use ordinance for that county.

[4] Any person or entity who has "submitted written comments on a development application" is considered an interested party. SKAMANIA COUNTY CODE (SCC) 22.04.010, at 373.

development complies with the Ordinance. The director then mails a copy of the decision, which includes notice of the right to appeal, to the applicant and all "interested persons." SCC 22.06.050(C)(3).

Under the Ordinance, the director's decision becomes final unless it is appealed by an applicant or interested party to the Skamania County Board of Adjustment within 20 days of the date the decision is rendered. If an appeal is filed, the Board of Adjustment considers the director's decision de novo and, after a hearing and presentation of evidence, issues written findings of fact, conclusions of law, and an order. After the Board of Adjustment issues its decision, there can be a further appeal to the Gorge Commission. That appeal is heard on the record submitted by the Board of Adjustment.

The Ordinance does not expressly set out a time limit for appeals from the Board of Adjustment to the Gorge Commission. The Act does, however, provide that "[a]ny person or entity adversely affected by any final action or order of a county" may appeal such action or order within 30 days by filing with the Gorge Commission "a written petition requesting that such action or order be modified, terminated, or set aside." 16 U.S.C. § 544m(a)(2); *see also* OR. ADMIN. R. (Columbia River Gorge Commission Rules) (hereinafter Gorge Commission Rules) 350-060-0000 through -0050.

## B. The Beas' Land Use Application

In November 1996, Brian and Jody Bea applied to Skamania County to build a one-story house, a barn, and a shop on 40 acres of property they owned within the Scenic Area. According to the application, the structures were to be situated on a bluff overlooking the Columbia River. Following receipt of the Beas' application, the County gave notice to the Gorge Commission, an organization called "Friends of the Columbia Gorge" (Friends), and others[5] that it was reviewing the application. Following the comment period, in which both Friends and the Gorge Commission made

---

[5] *See* SCC 22.06.040(B)(3).

comments, the director approved the Beas' application. The director's decision, which was entered on May 19, 1997, was subject to 33 conditions that were primarily related to a requirement in both the Management Plan and the Ordinance that every new development in the Scenic Area be "visually subordinate to its setting as seen from key viewing areas." SCC 22.10.020(B)(1).

The director's decision was sent to the Gorge Commission and Friends. It set forth the procedure for appealing the decision and specified that the decision would become final unless a written notice of appeal to the Board of Adjustment was filed within 20 days. Clerk's Papers (CP) at 116. The decision was not appealed within that 20-day time period and, consequently, no proceeding before the Board of Adjustment has ever taken place. Neither was the decision appealed to the Gorge Commission under § 544m(a)(2) of the Act within 30 days after it became final.

The Beas thereafter began construction of their residence and adjacent buildings. During construction, the Beas allegedly violated several of the conditions that had been established by the director. The County also concedes that it was somewhat lax in enforcing the conditions established by the director.[6] The County eventually discovered that the house was being built 10 feet north (away from the river) of where it was to be located pursuant to the Beas' application. The County took no action, however, because it concluded that the slight change in location was insignificant.

By the summer of 1998, the Gorge Commission became concerned that the County's decision approving the Beas' application might be in violation of the Act, the Management Plan, and the Ordinance.[7] Consequently, its executive director brought an "enforcement action" against the County pursuant to § 544m(a)(1) of the Act and Gorge

---

[6] Whether (1) the Beas complied with the director's decision or (2) the County adequately enforced the conditions of that decision are questions that are not before this court.

[7] At that time, the Beas had invested nearly $200,000 in the house, which was over 50 percent completed.

Commission Rule 350-030 by serving the County with a "Notice of Alleged Violation." In its notice, dated July 27, 1998, the Gorge Commission alleged that the County's approval of the Beas' project violated the Act, the Management Plan, and the County's Ordinance. It ordered the County to resolve the violation

> in a manner resulting in: (1) immediate cessation of all development activity on Brian and Jody Bea's property . . . ; (2) revision of [the] Director's Decision . . . ; (3) issuance of an amended Director's Decision in full compliance with the provisions of the Scenic Area Act, Management Plan, and . . . Ordinance . . . , including but, not limited to, siting the structures at alternative sites . . . ; and, (4) bringing all development on the property into full compliance with the amended Director's Decision, the Act, Management Plan, and . . . Ordinance[.]

CP at 123; *see also* CP at 124.

The County responded to the notice of alleged violation in an answer dated August 10, 1998. In its answer, the County denied that "it ha[d] improperly or unlawfully interpreted or administered the scenic ordinance or the . . . Act" and stated that it "d[id] not plan to take any of the proposed disposition alternatives outlined by the Executive Director." Admin. Hr'g R., Notebook at 17. The County also alleged, by way of affirmative defenses, that the Gorge Commission could not "now challenge the issuance of the Director's Decision" because it had failed to file a notice of appeal or take other action before the decision became final and had "failed to exhaust its administrative remedies." *Id.* at 19. It also claimed that the Gorge Commission lacked "standing, and jurisdiction." *Id.*

Because the Gorge Commission and the County were not able to settle their differences, the matter became a "contested case" before the Gorge Commission under Gorge Commission Rule 350-030-070(1)[8] and was set for a hear-

---

[8] Gorge Commission Rule 350-030-070(1) provides that "[a] violation that is not resolved through [an agreement] shall be conducted as a contested case." CP at 440. Gorge Commission Rules 350-016-008 through 350-016-024 govern the procedures for contested cases.

ing. The Gorge Commission permitted Friends to intervene in the case and joined the Beas as participants.[9]

At the hearing, Skamania County moved to dismiss the action against it for lack of jurisdiction, arguing that the Gorge Commission lacked authority to challenge the validity of the County's final approval decision because it had not appealed the director's decision within 20 days of the date the decision was issued as provided by the Ordinance or 30 days of the date the decision became final as provided by the Act. The Gorge Commission denied the County's motion. It concluded, as a matter of law, that, notwithstanding the fact that it had not appealed the County's decision, it had authority to order the County to nullify or revise that decision pursuant to 16 U.S.C. § 544m(a)(1), which provides: "The Commission shall monitor the activities of counties . . . and shall take such actions as it determines are necessary to ensure compliance." CP at 38-39. The Commission emphasized that this provision does not contain any limitation on when the Gorge Commission may act.

Following the hearing, the Gorge Commission issued findings of fact and conclusions of law. Significantly, it concluded that the County's decision violated the Act, the Management Plan, and the Ordinance. It ordered the County to: (1) "immediately issue an order stopping the property owners from continuing any development activity on the site until and unless in accord with a County Decision issued in compliance with the remaining portions of this order"; (2) "revise [the] Director's Decision . . . and

---

[9] The Gorge Commission appears to have joined the Beas as an "indispensable party," but did not use that terminology specifically. It did, however, offer the following explanation in its conclusions of law:

"The Commission joined the property owners because of its belief that their participation was needed for a just adjudication of this action. The Commission ruled in joining the property owners that without their participation, they would not adequately be able to protect their interests, and complete relief could not be afforded. Without joinder of the property owners the Commission also believed that Skamania County might be placed in a position of incurring inconsistent obligations." CP at 49-50.

adopt a new or revised decision that is in full compliance with the provisions of the Scenic Area Act, Management Plan and Skamania County Land Use Ordinance . . . , including but not limited to siting the structures at alternative sites"; and (3) "take all necessary steps to assure that development on the property in question is brought into full compliance with the Scenic Act, the Management Plan and the County's ordinances." CP at 50-51.

Skamania County and the Beas subsequently sought review of the Gorge Commission's findings of fact, conclusions of law, and order in the Skamania County Superior Court. The Beas combined their petition for judicial review with a complaint against the Gorge Commission and Skamania County for damages. Skamania County and the Beas both cited § 544m of the Act as the source of the superior court's jurisdiction to hear their appeal.[10] Their petitions for judicial review were consolidated and heard, in July 1999, by a visiting Clark County Superior Court judge, sitting by designation.[11] After the hearing, the superior court entered a "Final Judgment" in which it affirmed the Gorge Commission's findings of fact, conclusions of law, and order. CP at 66-67. The court specifically adjudged "that the Columbia River Gorge Commission correctly applied 16 U.S.C. § 544m in the Decision." CP at 67. Skamania County and the Beas subsequently petitioned this court for direct

---

[10] Section 544m(b)(6)(C) of the Act vests jurisdiction "over any appeal of any order, regulation, or other action of the Commission" with "[t]he State courts of the States of Oregon and Washington." Section 544m(b)(4) allows

"Any person or entity adversely affected by—

"(A) any final action or order of . . . the Commission . . .

" . . . .

"(D) . . . [to] appeal such action or order by filing [in the proper court,] within sixty days after the date of service of such order or within sixty days after such action is taken, a written petition requesting such action . . . [or] order . . . be modified, terminated, or set aside."

[11] The Beas' claims for damages for alleged civil rights violations and inverse condemnation were not heard and remain pending before that court awaiting our resolution of this appeal.

review of the superior court's judgment, and we granted their petition.

## II. THE GORGE COMMISSION'S AUTHORITY UNDER 16 U.S.C. § 544m(a)

The principal issue before us is whether the Gorge Commission had authority under the Act to invalidate Skamania County's land use decision, despite its failure to appeal the director's decision to the County's Board of Adjustment within 20 days of the date the decision was issued as provided by the Ordinance or to the Gorge Commission within 30 days of the director's decision becoming final as provided by the Act.[12] Put another way, does 16 U.S.C. § 544m(a)(1), as the Gorge Commission and Friends assert, confer upon the Gorge Commission the power to collaterally invalidate a final county land use decision after the appeals period has expired and construction has begun? Or, as Skamania County and the Beas contend, is the Gorge Commission's authority to "modify, terminate, or set aside" final county land use decisions limited to appealing them pursuant to the Ordinance and § 544m(a)(2) of the Act?

### A. Standard of Review

An agency's conclusions of law, including its interpretations of statutes, are reviewed de novo under an "error of law" standard that permits us to substitute our judgment for that of the agency. *Wenatchee Sportsmen Ass'n v. Chelan County*, 141 Wn.2d 169, 175-76, 4 P.3d 123 (2000). Construction of the Act is a question of federal law.[13] When we

---

[12] We express no opinion as to whether the respondents could have availed themselves of a direct appeal to the Gorge Commission, having failed to first appeal the director's decision to the County's Board of Adjustment, as that issue is neither before us nor necessary to resolve given the result that we have reached here.

[13] Under the federal constitution, formation of an interstate compact requires congressional consent. U.S. Const. art. I, § 10 ("No state shall, without the consent of congress, . . . enter into any agreement or compact with another state . . . ."). Here, Congress conferred its consent by passing the Act and, therefore, construc-

review an agency's construction of a federal statute, we must determine whether Congress has directly spoken on the question at issue and has clearly indicated its intent. *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984). If it has, then "that is the end of the matter," and we must give effect to that intent. *Chevron*, 467 U.S. at 842. While engaging in this analysis, we must look to the statute in its entirety—all of its provisions, its object, and its policy—not just at the particular language in isolation. *Dole v. United Steelworkers of Am.*, 494 U.S. 26, 35, 110 S. Ct. 929, 108 L. Ed. 2d 23 (1990). If, on the other hand, "the statute is silent or ambiguous with respect to the specific issue, the question for [us] is whether the agency's [interpretation] is based on a permissible construction of the statute. *Chevron*, 467 U.S. at 843. In such cases, the interpretation of the agency charged with administering the statute is generally entitled to deference, and to sustain it we need find only that the agency's interpretation was sufficiently rational to preclude us from substituting our judgment for that of the agency. *Chem. Mfrs. Ass'n v. Natural Res. Def. Council, Inc.*, 470 U.S. 116, 125, 105 S. Ct. 1102, 84 L. Ed. 2d 90 (1985). An agency's interpretation of an ambiguous statute is not entitled to deference, however, if the interpretation is not within the agency's area of expertise, *Nat'l Ass'n of Gov't Employees, Inc. v. Fed. Labor Relations Auth.*, 179 F.3d 946, 950 (D.C. Cir. 1999); *see also Fed. Election Comm'n v. NRA Political Victory Fund*, 513 U.S. 88, 97, 115 S. Ct. 537, 130 L. Ed. 2d 439 (1994), or if the interpretation is entirely inconsistent with the agency's prior administrative practice. *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 212, 109 S. Ct. 468, 102 L. Ed. 2d 493 (1988).

## B. Analysis

As indicated above, the first prong of the *Chevron* test

tion of the Act is governed by federal law. *See Petty v. Tenn.-Mo. Bridge Comm'n*, 359 U.S. 275, 278, 79 S. Ct. 785, 3 L. Ed. 2d 804 (1959).

requires us to determine if Congress has directly spoken on the question at issue and if it has made its intent clear. If the answer to both questions is affirmative, then this court must give effect to Congress' unambiguously expressed intent without regard to the interpretation adopted by the agency. It is only if we determine that the statute is silent or ambiguous on this particular question that we must evaluate the agency's interpretation in light of *Chevron's* second prong.

Skamania County and the Beas assert that Congress has directly spoken on the question before us and has clearly expressed its intent that the Gorge Commission's authority to "modify, terminate, or set aside" County land use decisions is limited to appealing them pursuant to the Ordinance and the Act. They cite § 544m(a)(2) of the Act as the primary source for their argument. It provides:

> Any person or entity adversely affected by any final action or order of a county relating to the implementation of [the Act] may appeal such action or order to the Commission by filing with the Commission within thirty days of such action or order, a written petition requesting that such action or order be modified, terminated, or set aside.

16 U.S.C. § 544m(a)(2).

The Gorge Commission, joined by Friends, contends that § 544m(a)(2)'s 30-day appeals provision does not apply to it. They also maintain that the Gorge Commission is not subject to the 20-day limit on appeals contained in the Ordinance. Rather, it asserts that it has plenary powers under the Act to take whatever actions that it determines are necessary, whenever it deems it necessary, to ensure that the Act, the Management Plan, and the Scenic Area counties' land use ordinances are not violated. As support for this argument, the Gorge Commission and Friends cite § 544m(a)(1) of the Act, which provides: "The Commission shall monitor activities of counties pursuant to [the Act] and shall take such actions as it determines are necessary to ensure compliance." 16 U.S.C. § 544m(a)(1).

We direct our attention first to the interpretation of the

Act proffered by the Gorge Commission and Friends. We agree that, when read in isolation, § 544m(a)(1) does appear to authorize the Gorge Commission to do *anything* that it believes is necessary to ensure that the Act is not violated. A court may not, however, read a provision in isolation when it is engaging in statutory interpretation; rather, we must read the provision in light of the statute as a whole. *See Dole*, 494 U.S. at 35. When read in this manner, we cannot say that the interpretation advanced by the Gorge Commission and Friends is consistent with the expressed intent of Congress.

As Skamania County and the Beas have observed, the Gorge Commission's interpretation is inconsistent with other provisions of the Act. The flaw in the Gorge Commission's interpretation is made apparent when one compares § 544m(a)(1) to § 544m(b)(2). Just as § 544m(a)(1) requires the Gorge Commission to take actions to "ensure compliance" by counties with the Act, § 544m(b)(2) permits citizens to commence a civil action against counties to "compel compliance" with the Act. If the Gorge Commission's power to "ensure compliance" with the Act includes the power to invalidate a final county land use decision after the appeals period has expired, as it contends, it would make little sense to give the term "compel compliance" in the citizen suit provision any narrower interpretation. Yet, to do so would render the 30-day limitation on appeals a nullity.

█ The Gorge Commission's interpretation of § 544m(a)(1) is also inconsistent with § 544m(b)(1)(B) of the Act. The latter subsection authorizes the Gorge Commission to "institute a civil action for an injunction or other appropriate order" to prevent any person or entity from utilizing lands in violation of the Act, the Management Plan, any county land use ordinance, or any other Commission or county order. The Gorge Commission's interpretation of subsection (a)(1), when viewed against subsection (b)(1)(B), runs afoul of the general principle of statutory interpretation that " 'Congress acts intentionally and purposely when it includes particular language in one section of a statute but

omits it in another.' " *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 537, 114 S. Ct. 1757, 128 L. Ed. 2d 556 (1994) (quoting *City of Chi. v. Envtl. Def. Fund*, 511 U.S. 328, 338, 114 S. Ct. 1588, 128 L. Ed. 2d 302 (1994)). If Congress intended in § 544m(a)(1) to grant the Gorge Commission the power that it purported to exercise in this case—the power to collaterally invalidate a final county decision and to order a residence built in reliance on that decision moved to an alternate location—why did it not expressly say so when it gave the Gorge Commission authority to obtain that remedy through a civil action for an injunction in the very next subsection? Indeed, if the Gorge Commission has the power to administratively impose an injunction without considering equitable factors or even naming the property owner as a defendant in the proceeding, as it has done in this case, why would it ever bring a civil action for injunctive relief under § 544m(b)(1)(B)?

The Gorge Commission and Friends assert that their interpretation of the Act is consistent with the mandatory nature of the Commission's enforcement obligation under the Act. They point to the Act's legislative history, and argue that from it we may glean that Congress made a deliberate choice to make the Gorge Commission's enforcement of the Act mandatory.[14] If the Gorge Commission's power to invalidate or modify a final county action or order is limited by the appeals provisions of the Ordinance and the Act, they argue, the Commission would not be able to fulfill its mandate under § 544m(a)(1) to "take such actions as it determines are necessary to ensure compliance" with the Act. *See* Resp. Br. of Columbia River Gorge Comm'n at 28-30; Resp't Friends Opening Br. at 25-27. Since Congress made the considered choice to require the Gorge Commission to enforce the Act, the Gorge Commission asserts, it would then be inconsistent with congressional intent to interpret § 544m(a)(1) as a limitation on the Gorge Commission's enforcement power.

---

[14] *See* Bowen Blair, Jr., *The Columbia River Gorge National Scenic Area: The Act, Its Genesis and Legislative History*, 17 Envtl. L. 863, 967 (1987).

As Skamania County and the Beas point out, however, it is *because* the Gorge Commission's enforcement obligation is mandatory that the appeals provisions *must necessarily* apply to it. Section 544m(a)(2) clearly allows for appeals of final county decisions by persons and entities other than the Gorge Commission. It also clearly limits appeals to those made within 30 days from the date of the county decision being appealed. If, as the Gorge Commission argues, it is not bound by the 30-day limit on actions to invalidate or modify final county decisions, and, in addition, it has a *mandatory* obligation to enforce the Act, then any person or entity who objects to a final county decision, but who has failed to file a timely appeal, may circumvent the 30-day limit on appeals by bringing the matter to the attention of the Gorge Commission, which would be required by law to invalidate or modify the final county decision. Indeed, in this instance, Friends made a presentation to the Gorge Commission over one year after the County's decision approving the Beas' application became final, pointing out deficiencies in the Beas' application and the County's approval decision and demanding that the Gorge Commission take action to bring the Beas' development into compliance with the Act. Whether or not this presentation influenced the Gorge Commission's decision to commence an enforcement action against the County, it illustrates Skamania County's and the Beas' point that if the Gorge Commission is not bound by the 30-day limit on actions to modify, terminate, or set aside final county decisions, then nobody is.

We now turn to Skamania County's and the Beas' interpretation of the Act. We find ourselves in agreement with them that, under a plain reading of § 544m(a)(2), the Gorge Commission must file a timely appeal in order to invalidate or modify a county decision. We reach this conclusion because the Gorge Commission, whose duty it is to ensure compliance with the Act, is undeniably an "entity" that is "adversely affected" by a final county land use decision in conflict with the Act. Further, unlike the inter-

pretation advanced by the Gorge Commission and Friends, Skamania County's and the Beas' interpretation of § 544m(a) is consistent with the other enforcement provisions of the Act.

Under Skamania County's and the Beas' interpretation of the Act, § 544m(a)(1) mandates the Gorge Commission to enforce the Act, but gives it discretion as to how to fulfill this obligation from among those powers expressly delegated to it in other provisions. For example, the Gorge Commission may appeal a final county action or order within 30 days under § 544m(a)(2); it may bring an administrative action under § 544m(a)(3) to assess a civil penalty against any person or entity who willfully violates any scenic laws; it may institute a civil action for an injunction or other appropriate order under § 544m(b)(1)(B) to prevent any person or entity from violating the Act; and, pursuant to the Management Plan, it may monitor and evaluate county decisions, substantively review and comment upon land use applications, and consult with county officials concerning ways to improve the county's review and approval process. As we have noted above, the Gorge Commission and Friends would have us interpret § 544m(a)(1) as authorizing it to do *anything* that it determines is necessary to enforce the Act. In our view, it would have been unnecessary and redundant for Congress to have expressly delegated the aforementioned other powers to the Gorge Commission and to the secretary of Department of Agriculture if the Commission already had the broader power under § 544m(a)(1) that it has purported to exercise here.

Our conclusion in this regard is bolstered by our observation that Skamania County's and the Beas' interpretation of the Act is consistent with the strong public policy favoring administrative finality in land use decisions. Federal courts have long recognized that:

> [S]tatutory time limits on petitions for review of agency action are jurisdictional in nature. These limitations serve the "important purpose of imparting finality into the administrative process, thereby conserving administrative resources." Fur-

thermore, timeliness requirements reflect "a deliberate congressional choice to impose statutory finality on agency orders, a choice we may not second-guess."

*Eagle-Picher Indus. v. United States Envtl. Prot. Agency*, 759 F.2d 905, 911 (D.C. Cir. 1985) (footnotes omitted). We have also recognized a strong public policy supporting administrative finality in land use decisions. In fact, this court has stated that "[i]f there were not finality [in land use decisions], no owner of land would ever be safe in proceeding with development of his property. . . . To make an exception . . . would completely defeat the purpose and policy of the law in making a definite time limit." *Deschenes v. King County*, 83 Wn.2d 714, 717, 521 P.2d 1181 (1974).

By establishing a 30-day appeal period in § 544m(a)(2), we believe that Congress sought to promote this policy of administrative finality in order to avoid unjust results. If we accepted the Gorge Commission's argument that it has the power to invalidate or modify a county decision approving a development in the Scenic Area at any time, however, an unjust result would be produced. We say that because the record shows that the Beas' residence was over half completed at the time the Commission ordered the County to invalidate the decision upon which the Beas had relied in proceeding with construction. It is hardly just to require them now to relocate the half-finished building. In the final analysis, the Gorge Commission's interpretation of the Act is inconsistent with this principle of administrative finality in land use decisions in that there is no principled limitation on the Gorge Commission's exercise of its purported power. We believe that had Congress intended to eviscerate the nearly universal rule of administrative finality in land use decisions and grant the Gorge Commission the unusual power that it claims to have, it would have said so expressly and unequivocally.

The Beas also raised a compelling argument concerning delegation and agency. Prior to the effective date of the Ordinance, the Gorge Commission reviewed all applications for development within the Scenic Area under interim

guidelines. *See* 16 U.S.C. § 544h(c). If the Gorge Commission had approved the Beas' application under those guidelines and the decision had become final because it was not appealed, the Gorge Commission could hardly have argued that § 544m(a)(1) allowed it to go back and invalidate its own decision if it later determined that it had made a mistake. When the Gorge Commission approved the Ordinance as consistent with the Management Plan, the authority that the Gorge Commission had under the interim guidelines was transferred to the County, with the Gorge Commission retaining only the right to comment on land use applications, the right to appeal the director's decisions to the County's Board of Adjustment, and final appellate authority over all final county decisions. It stands to reason that if the Gorge Commission fails to exercise the authority that it retained for itself when it approved the Ordinance, then it is estopped from challenging the validity of such final county decisions just as if it had made the decision itself.

As an additional point, only Skamania County's and the Beas' interpretation of the Act is consistent with Congress' intent that the Act create a partnership between local and state governments and the federal government. *See* 132 Cong. Rec. S15628-02 (daily ed. Oct. 8, 1986) (statements of Sen. Hatfield (Or.) and Sen. Gorton (Wash.)). The Gorge Commission appears to view its role at the beginning of the application process as minimal, as it rarely provides substantive comments on development applications and does not routinely make site visits to properties. Yet clearly, from a policy standpoint, it is far better to have the Gorge Commission take an active role at the beginning of the application process—to substantively review land use applications, make site visits where necessary, give informed comment on applications, and appeal decisions where it believes that the County has misapplied the law or misunderstood the facts—than to allow the Gorge Commission to passively stand by until construction has begun and then to determine whether developments, as constructed, comply

with the Act, the Management Plan, and the Ordinance.

In this case, the Gorge Commission made no substantive comments on the Beas' application and site plan or the director's decision, until over one year after construction had begun. Nevertheless, it now contends that both the site plan and application were inadequate when submitted. Further, the primary violations that the Gorge Commission found in the director's decision concern the location and height of the Beas' residence—both of which would have been apparent by even the most cursory review of the site plan and the director's decision. In short, the litigation in which the parties are embroiled could have been avoided had the Gorge Commission become involved in the process earlier, taking advantage of the comment and appeals period. But the Gorge Commission's interpretation of the Act removes any incentive for the Gorge Commission to work together with the Scenic Area counties to engage in early and thorough review of proposed developments.

The Gorge Commission and Friends take issue with Skamania County's and the Beas' interpretation of the Act, contending that it would be anomalous to interpret § 544m(a)(2) to require the Gorge Commission to appeal a decision by the county to itself. This argument runs counter to Friends' contention that the "[a]ppellants confuse the dual roles of the Commission." Resp't Friends Opening Br. at 20. As Friends concede, the Gorge Commission has dual roles under the Act: enforcement and quasi-judicial. As it notes, if a person or entity appeals a final county decision to the Gorge Commission, the Gorge Commission acts as a judicial body and may modify, terminate or set aside the county's final decision. Likewise, if the Gorge Commission brings an enforcement action against a county, as in this case, the Gorge Commission also presides over the case and renders a decision in its quasi-judicial capacity. Thus, it is no more anomalous for the Gorge Commission to appeal a final county decision to itself, in its quasi-judicial capacity, than it is for the Gorge Commission to bring an enforcement action against a county, to be heard and decided by

the Gorge Commission also sitting in its quasi-judicial capacity.

Friends also asserts that "Appellants' construction of subsection (a)(1) makes the terms 'shall take whatever actions as it determines are necessary to ensure compliance' surplusage, since the Commission would already have that authority under subsection (a)(2)." Resp. Br. of Columbia River Gorge Comm'n at 26. We disagree. In our view, § 544m(a)(2) can, quite easily, be read to apply to the Gorge Commission without rendering § 544m(a)(1) surplusage. That is so because each provision uses different language to describe the types of county activities over which the Gorge Commission has oversight. Subsection (a)(1) uses general language and gives the Gorge Commission a general power to monitor the "activities of counties" and to take action to ensure that the "activities of counties" comply with the Act. Subsection (a)(2), on the other hand, uses specific language and concerns only "final action[s] or order[s] of a county relating to the implementation of [the Act]." Thus, while subsection (a)(1) concerns the entire universe of activities that a county might engage in, subsection (a)(2) sets aside for special treatment only those "county activities" which are "final action[s] or order[s]" relating to implementation of the Act. Subsection (a)(1) provides no time limitation on actions taken with respect to the "activities of counties" in general; however, subsection (a)(2) requires that actions to "modif[y], terminate[], or set aside" final county "action[s] or order[s]" be brought within 30 days of that decision and in the form of an appeal.

Finally, amici curiae Multnomah County and the United States argue that if the Gorge Commission does not have the power under § 544m(a)(1) to invalidate final county land use decisions in violation of the Act, then there will be a lack of uniformity in the counties' interpretations of scenic laws and the Gorge Commission will not be able to "ensure compliance" with the Act at the county level. Multnomah County's Br. of Amicus Curiae at 4; *see* United States of America's Br. of Amicus Curiae at 5-7. These arguments

miss the mark in two respects: First, Skamania County's and the Beas' interpretation of the Act promotes uniformity at least as well as, if not better, than the Gorge Commission's interpretation. By having final appellate authority over all county land use decisions, and by exercising such authority to correct misinterpretations or misapplications of the law, the Gorge Commission would have the final say over application and interpretation of the Act by counties within the Scenic Area. Likewise, the Gorge Commission would have final say over the Management Plan and ordinances. The Gorge Commission's appellate authority can be invoked in *every instance*, not just when an enforcement action is brought. Second, development of the law in this appellate/quasi-judicial setting would be more principled and less arbitrary than if the Gorge Commission simply maintains enforcement actions whenever its attention is drawn to a complaint that a decision may be in violation of the Act, the Management Plan, or a county's ordinance.

Even though § 544m(a)(1) of the Act does not confer upon the Gorge Commission the power to collaterally invalidate final county land use decisions and order that residences built in reliance on such decisions be relocated, the Gorge Commission still has ample means at its disposal to ensure compliance with the Act. In that regard, the Gorge Commission can substantively review land use applications and site plans when it receives notice of a county's development review. It can then attempt to shape the county's decision through written comments and suggestions. If it disagrees with a county's approval decision, it can appeal the decision to the county's Board of Adjustment. If still dissatisfied with the decision, the Gorge Commission can appeal that decision to itself, and decide, in its quasi-judicial capacity, whether the county correctly interpreted and applied the Act, the Management Plan, and the local ordinance. In addition, if it believes that a property owner or county is intentionally violating the Act, the Management Plan, or the county's ordinance, it may bring an administrative

action under § 544m(a)(3) to assess civil penalties. It can also exercise its power under § 544m(b)(1)(A) to institute a civil action for an injunction or other appropriate order to prevent a person or entity from violating these laws. Finally, if it concludes that an injunction or other order would be insufficient, it may request the secretary of the Department of Agriculture to exercise the government's power under § 544g to condemn and acquire any lands used in a manner inconsistent with the Act, the Management Plan, or county ordinance. All the while, it should be monitoring and reviewing county land use decisions to try to improve the general manner in which counties make land use decisions and implement the Act. In short, the Gorge Commission has many tools at its disposal. Collateral administrative invalidation of final county approval decisions is not, however, one of them.

The Gorge Commission and Friends assert that their interpretation of the Act is entitled to deference under *Chevron*. However, as we have noted above, an agency's interpretation is relevant under *Chevron* only if the statute is silent or ambiguous on the statutory question at issue. Because we have concluded that the intent of Congress is clear on this issue, it is unnecessary for us to proceed to the second prong of the *Chevron* test. We note, however, that even if we were to conclude that the Act is silent or ambiguous on this point, the Gorge Commission's proffered interpretation would not be entitled to any deference by this court. We say this because the question that is before us is not a matter within the Gorge Commission's area of expertise. *Nat'l Ass'n of Gov't Employees*, 179 F.3d at 950; *Fed. Election Comm'n*, 513 U.S. at 97. The Gorge Commission's interpretation is also not entitled to deference by the court for the reason that it is wholly unsupported by its prior administrative practice. *Bowen*, 488 U.S. at 212. In that regard, it concedes that there are numerous other developments within the Scenic Area that are currently in violation of the Act, the Management Plan, and the Scenic

Area counties' ordinances.[15] Despite that fact, with this one exception, the Gorge Commission has never sought to collaterally invalidate a final county land use decision or assert that it has such power under § 544m(a)(1).

Further, when the Gorge Commission reviewed and approved the Ordinance as consistent with the Management Plan and Act, why did it not require inclusion of a provision explaining or referring to its purported collateral invalidation power under § 544m(a)(1)? Indeed, the Management Plan itself, a document that the Gorge Commission was directed by Congress to adopt to implement the Act, is entirely devoid of any reference to the power that the Gorge Commission now claims to have. To the contrary, the Management Plan evidences that the Gorge Commission envisioned its own role under § 544m(a)(1) as one of monitoring, review, evaluation, and consultation, focused on assessing the overall effectiveness of the entire permit process and the general way that the Management Plan was being implemented by the counties.

As a final point, we note that even if we were required to afford deference to the Gorge Commission's interpretation of the Act under *Chevron*'s second prong, we would still be bound to reject it. We say that because the Gorge Commission's interpretation is not sufficiently rational as to preclude this court from substituting its judgment for that of the agency. *See Chemical Mfrs.*, 470 U.S. at 125. As indicated above, it contradicts the plain language of §§ 544m(a)(2), 544m(b)(2), and 544m(b)(1)(B), the overall statutory scheme of the Act, the strong public policy favoring finality in land use decisions, and Congress' intent that the Gorge Commission and the Scenic Area counties work together in a partnership to implement the Act.

### III. OTHER ISSUES RAISED BY THE PARTIES

The Gorge Commission and Friends have raised

---

[15] *See* Beas' Resp. to Amicus Brs. of the Nat'l Trust for Historic Pres., 1000 Friends of Or., 1000 Friends of Wash., and United States app. A, COLUMBIA RIVER GORGE COMM'N, SCENIC RESOURCES REPORT (Draft 2000).

another argument that, they assert, constitutes a basis for affirming the Gorge Commission's findings of fact, conclusions of law, and order, even if we reject their interpretation of § 544m(a)(1) and (a)(2) and conclude that the Commission was required to file a timely appeal in order to invalidate or modify the County's approval decision. The Gorge Commission and Friends contend that they could not have filed a timely appeal in this case because, they allege, it did not become apparent to them until after the Beas' construction began that the director's decision violated the law. They also cite to our decisions in *Eastlake Community Council v. Roanoke Associates, Inc.*, 82 Wn.2d 475, 513 P.2d 36 (1973); *Steele v. Queen City Broadcasting Co.*, 54 Wn.2d 402, 341 P.2d 499 (1959); *Hull v. Hunt*, 53 Wn.2d 125, 331 P.2d 856 (1958); *Nolan v. Blackwell*, 123 Wash. 504, 212 P. 1048 (1923); and the Court of Appeals decision in *Radach v. Gunderson*, 39 Wn. App. 392, 695 P.2d 128, *review denied*, 103 Wn.2d 1027 (1985), and assert that the director's decision is not entitled to any finality because it was "illegal" when issued.

We do not believe that the superior court can be affirmed on this basis. Even if we were to hold that the Gorge Commission's failure to timely appeal the County's approval decision were excused for the reasons asserted by the respondents, this would not authorize the action that the Gorge Commission took in this case. We reach this conclusion because the Gorge Commission did not attempt to file a late appeal of the director's decision under the Ordinance or § 544m(a)(2) of the Act, when it allegedly learned that the director's decision violated the Act, the Management Plan, and the Ordinance, as it should have done under this line of reasoning. Nor did it commence a civil action for injunctive relief under § 544m(b)(1)(B) of the Act. Rather, the Gorge Commission commenced an administrative action in an effort to collaterally invalidate that decision—an action that we have found to have been unauthorized by the Act.

▮▮▮▮ Skamania County and the Beas have also argued that the Gorge Commission's order is arbitrary and capri-

cious. In light of our decision here, it is unnecessary for us to resolve the arguments made by the parties on this issue. It is sufficient to say that the Gorge Commission's order is reversible on the basis that it was arbitrary and capricious because agency action that is in violation of a statute is, by definition, arbitrary and capricious, or contrary to law. It is likewise unnecessary for us to address the challenges to various findings of fact that have been made by Skamania County and the Beas. For the reasons stated above, we have concluded that the Gorge Commission had no authority under the Act to maintain the proceeding against the County that has led to this appeal. It follows, therefore, that all of the findings of fact the Gorge Commission made in that proceeding are of no moment.[16]

## IV. CONCLUSION

We are satisfied that the intent of Congress in enacting § 544m(a)(1) and (a)(2) of the Act is clear. Section 544m(a)(1) of the Act does not authorize the Gorge Commission to collaterally invalidate final county land use decisions. Rather, any Gorge Commission action to modify, terminate, or set aside a final county decision must be taken pursuant to the Ordinance and the Act and in the form of a timely appeal. It follows, therefore, that the action that the Gorge Commission took against the County and the Beas in this case was contrary to law. Accordingly, we reverse the order of the Skamania County Superior Court

---

[16] Although the concurrence points out that "[t]he testimony taken by the [Gorge] Commission relative to the *challenge to the final decision of the County* . . . is equally relevant to the County's [enforcement authority]" under § 544m(a)(1) (emphasis added) (concurrence at 59), the action maintained here by the Gorge Commission was to "modify, terminate, or set aside" a final order of the County pursuant to § 544m(a)(2). The entire proceeding was, therefore, subject to the 30-day filing period for appeal set forth in § 544m(a)(2). As we have noted, because the Gorge Commission did not appeal the final County order within this period it lacked any authority to entertain the proceeding. *See Skagit Surveyors & Eng'rs v. Friends of Skagit County*, 135 Wn.2d 542, 558, 958 P.2d 962 (1998) (an administrative body's authority is limited by the constraints imposed by statute). Accordingly, we must entirely vacate the resulting findings of fact, conclusions of law, and order. *See id.* at 568; *Dobbins v. Mendoza*, 88 Wn. App. 862, 871, 947 P.2d 1229 (1997) (a reviewing court is required to vacate the results of a proceeding when the original tribunal lacked the authority to entertain the proceeding).

affirming the Gorge Commission and vacate the Gorge Commission's findings of fact, conclusions of law, and order. We note, however, that our disposition of this case is without prejudice to the Gorge Commission to pursue other remedies that may be available to it under the Act and the Ordinance.

Reversed.

SMITH, JOHNSON, MADSEN, SANDERS, and BRIDGE, JJ., and GUY, J. Pro Tem., concur.

IRELAND, J. (concurring) — The majority correctly determines that the Columbia River Gorge Commission (Commission) had no authority to collaterally invalidate a final county land use decision after the appeals period had expired and construction had begun. However, under 16 U.S.C. § 544m(a)(1) of the Columbia River Gorge National Scenic Area Act (Act), the Commission is clearly within its rights to require Skamania County (County) to enforce its own decision against a property owner flagrantly violating the County's decision. Rather than vacating the Commission's findings of facts, conclusions of law, and order in their entirety, this Court should order the Commission to vacate those conclusions of law upon which the Commission's action was based, to vacate the Commission's enforcement order, and to remand for further proceedings.

The Columbia River Gorge is a pristine national treasure. Congress and the states of Washington and Oregon struggled mightily to create a vehicle to resolve competing economic, scenic, recreational, cultural, and national resources clashes to protect and support this area and its economy. The Act, ratified by the states of Washington and Oregon marks an unrivaled commitment to the environment which should be nurtured, not thwarted.

The Commission is charged with requiring (through management plans) that residential developments outside urban areas take place without adversely affecting the scenic, cultural, recreation, and natural resources of the

scenic area. 16 U.S.C. § 544d(d)(8). The Management Plan adopted by Skamania County and approved by the Gorge Commission requires new construction in the Scenic Area to be " 'visually subordinate to its setting as seen from key viewing areas.' " Majority at 38 (quoting Skamania County Code 22.10.020(B)(1)). Complaining parties, including Friends of the Columbia Gorge (Friends), claim the subject property of Brian and Jody Bea (Beas) violates this requirement of the plan. Although the County's decision is blamed in part for the violation, the Commission found numerous violations by the Beas of the conditions of approval.

Even though under this Court's decision, the County's decision cannot be challenged, the violations of conditions of approval and the County's failure to enforce, in the face of violations, were proper subjects of the Commission's administrative action. The Commission has a duty to enforce under § 544m(a)(1) of the Act: "The Commission shall monitor activities of counties pursuant to [the Act] and shall take such actions as it determines are necessary to ensure compliance." Although subsection (a)(2), relating to the appeal of a final order of the county, carries a time limit, subsections (a)(1) and (3) do not. Under subsection (a)(3) "Civil penalties," the Commission is authorized to assess civil penalties on any person or entity who willfully violates the management plan or any land use ordinance or any implementation measure or any order issued by the Commission pursuant to the Act.

The testimony taken by the Commission relative to the challenge to the final decision of the County with respect to the Beas' property is equally relevant to the County's failure to enforce its decision in the face of numerous violations by the Beas. The Commission specifically found the Beas violated the law:

> As discussed above, the County's decision imposed a number of conditions that appeared to require compliance with the Scenic Area Act, the Management Plan and the implementing ordinances. However, by subsequent failure to enforce these conditions, the County has allowed additional violations of the

Scenic laws to occur. Based upon the findings of fact set forth above, the Commission concludes that the County has further violated the Scenic laws by failure to enforce the conditions of approval as follows:

1a. Condition # 1: "All developments shall be consistent with the enclosed site plan, unless modified by the following conditions of approval. If modified, the site plan shall be consistent with the conditions of approval."

1b. As constructed to date, the house is not consistent with the site plan. Furthermore, the property owners have still not submitted a site plan that is consistent with the conditions of approval.

2a. Condition # 2: "All buildings shall be surrounded by a maintained fuel break of 50 feet . . ."

2b. The testimony showed that the third landscape plan submitted by the property owners does not meet either the County landscape requirements (of July 28, 1998, and September 11, 1998) or the fuel break requirements.

3a. Condition # 13: "Dwellings shall be set back at least 200 feet from adjacent properties."

3b. At the time of the hearing, the house clearly violated this condition because it was approximately 15 feet from the adjacent property to the south.

4a. Condition # 22: "A grading plan shall be submitted by the applicant if more than 100 cubic yards of grading of filling will occur."

4b. The property owners excavated or disturbed more than 300 cubic yards of material without submitting a grading plan.

5a. Condition # 23: "A new site plan shall be submitted prior to issuance of any building permits. The new site plan shall show one location for each of the proposed buildings. All required screening trees, especially those required for the barn and shop location northeast of the home site (if those sites are chosen), shall also be shown on the new site plan."

5b. The property owners submitted a new site plan, but it did not comply with County requirements.

6a. Condition # 27: "The proposed residence shall be limited in height so as not to break the skyline nor the tree

canopy. The house shall be limited to one story with a daylight basement. However the main floor may include a loft so long as the total height of the house, above the floor elevation of the main floor, does not exceed 25 feet."

6b. In addition to violating the ordinance . . . , this condition has not been complied with by the property owners or enforced by the County. The house clearly breaks the skyline from the Columbia River, a key viewing area.

6c. The county did not enforce its decision that the home was to be one story. The County and the property owners admit that the home is more than a one story home.

7a. Condition # 28: "The building sites for all buildings shall be graded and staked prior to framing the foundations or beginning construction for staff to verify locations. Planning staff needs 72 hours['] notice to complete these site inspections."

7b. The building site for the house was not graded and staked prior to construction as required by this condition.

7c. The County did not and has not enforced this condition, including the 72 hour notice requirement.

8a. Condition # 29: "Applicant shall be required to retain all existing vegetation cover screening development from key viewing areas except for the small alders and berry bushes to be removed at building sites. The two existing fir trees, the proposed home will be located between, shall be retained for screening purposes."

8b. The property owners did not comply with, and the County did not enforce, this condition. Much of the existing vegetation was removed, and the house was not located between the two existing fir trees in a way that provided screening.

9a. The County stop work order provides: "If you fail to satisfy these conditions, then the stop work order will immediately go into effect on the 21st day."

9b. The conditions were not met but the County failed to enforce the stop work order.

Clerk's Papers at 23, 112-17.

There is no good reason to require the Commission to go through another administrative fact-finding proceeding to

cover the same ground. The majority's decision fosters delay and rewards the violators to the frustration of citizens concerned with the preservation of this unique and irreplaceable landscape. The Commission should be permitted to rely on the prior administrative proceeding to craft an appropriate enforcement order under § 544m(a)(1) or (3).