52 P.3d 1 (2002)
146 Wash.2d 904
CHELAN COUNTY, a municipal corporation; Eric Gebelein and Rebecca Waud, husband and wife, and the marital community composed thereof; Joseph J. Straus and Mary Shima, husband and wife, and the marital community composed thereof; Gary Kincaid and Julienne Kincaid, husband and wife, and the marital community composed thereof; and David Bale and Melissa Bale, husband and wife, and the marital community composed thereof, Respondents,
Cline Sweet and Kirsten Sweet, husband and wife, and the marital community composed thereof; Mel Simpson and Kim Simpson, husband and wife, and the marital community composed thereof; and John Peterson, a single man, Plaintiffs,
v.
Michael NYKREIM and Laurie Nykreim, husband and wife, and the marital community composed thereof; B. Rick Whitney and Vickie Whitney, husband and wife, and the marital community composed thereof; and William Kelly and Jane Kelly, husband and wife, and the marital community composed thereof, Petitioners.
No. 71067-8.
Supreme Court of Washington, En Banc.
Argued January 17, 2002.
Decided July 25, 2002.
*2 John Groen, Bellevue, for Petitioner/Appellant.
Gary Riesen, Chelan County Prosecutor, Susan Himkle, Deputy, Wenatchee, for Appellee/Respondent.
James Hanken, Seattle, Respondent Intervenor.
Kristopher Tefft, Olympia, Amicus Curiae on behalf of Building Industry Association of Wa.
Benjamin Waggoner, Robin Rivett, Bellevue, Amicus Curiae on Behalf of Oacific Legal Foundation.
SMITH, J.
Petitioners (Michael K. Nykreim and Laurie A.Nykreim, husband and wife; B. Rick Whitney and Vickie L. Whitney, husband and wife; and William J. Kelly and Jane E. Kelly, husband and wife) seek discretionary review of a decision of the Court of Appeals, Division Three, which affirmed summary judgment by the Chelan County Superior Court in favor of Respondents (Chelan County; Eric Gebelein and Rebecca Waud, husband and wife; Joseph J. Straus and Mary Shima, husband and wife; Gary Kincaid and Julienne Kincaid, husband and wife; and David Bale and Melissa Bale, husband and wife) declaring void a boundary line adjustment previously granted Petitioners by Chelan County and dismissing Petitioners' counterclaims for damages. The Court of Appeals held that the Respondents' challenge of the boundary line adjustment decision was a ministerial act which was not time-barred under the Land Use Petition Act (LUPA), chapter 36.70C RCW, because LUPA applies only to quasi-judicial land use decisions. We granted review. We reverse the Court of Appeals.

QUESTIONS PRESENTED
The questions presented in this case are (1) whether LUPA applies only to quasi-judicial land use decisions and not to ministerial decisions, and if not, whether Respondents' challenge to the boundary line adjustment decision by the Chelan County Planning Director is time-barred because it was made more than one year after the 21 day deadline for filing petitions for judicial review of land use decisions under LUPA; and (2) whether Petitioners are entitled to damages under RCW 64.40.020 because Respondent Chelan County either knew or should have known the boundary line adjustment *3 was in violation of Chelan County ordinances.

STATEMENT OF FACTS
On July 1, 1997, Petitioners acquired, as tenants in common, a large parcel of land in Chelan County from James S. Kempton[1] under a statutory warranty deed describing the property as the "Northwest Quarter[2] of the Southeast Quarter of Section 27, Township 24 North, Range 17 E.W.M., Chelan County, Washington." One tax parcel number, 24 17 27 000 050, was assigned to the property.[3] The property, consisting of approximately 40 acres, is traversed in the upper northwest portion by Icicle Cascade Orchards County Road and Icicle Creek.[4]
On August 11, 1997, Petitioners filed an application for a boundary line adjustment (BLA) with the Chelan County Planning Department and signed an acknowledgment with a statement of consent and waiver of claims agreeing to hold Chelan County harmless in any cause of action arising out of the BLA or recordation and consenting to the BLA proposed in the application.[5] In their BLA application, Petitioners attached legal descriptions indicating the property consisted of three existing parcels, referring to them as "Old Parcels A, B, and C."[6]
Old Parcel "A" was described as "That portion of the NW¼ of the SE¼ of Section 27, T24N, R17E W.M. Chelan County, Washington, lying Southerly and Southeasterly of the centerline of Icicle Creek."
Old Parcel "B" was described as "That portion of the NW¼ of the SE¼ of Section 27, T24N, R17E W.M. Chelan County, Washington, lying Southerly of the centerline of Icicle Creek County Road, also known as Cascade Orchard [sic] County Road and lying Northerly of the centerline of Icicle Creek." Old Parcel "C" was described as "That portion of the NW¼ of the SE¼ of Section 27, T24N, R17E W.M. Chelan County, Washington, lying Northerly of the centerline of Icicle Creek County Road, also shown as Cascade Orchards County Road."
In their pleading Petitioners answer that they "own property in the northwest quarter of the northeast quarter of Sec. 27 T24N, R17 E.W.M., not the northeast quarter of the southeast quarter." This is consistent with the legal descriptions they provided with their application and with the legal description in the conveyance from James S. Kempton to Petitioners by statutory warranty deed dated July 1, 1997. This case is concerned only with this parcel.
Aside from the reference in Petitioners' BLA application, there was no indication of record that the property had been previously divided as they asserted,[7] although the application included rough drawings depicting the "Old Parcels" and the proposed "New Parcels A, B, and C" with legal descriptions.[8] Petitioners sought to revise the boundary lines to form three rectangular lots with parallel boundaries.[9]
New Parcel "A" was described as "That portion of the NW¼ of the SE¼ of Section 27, T24N, R17E W.M. Chelan County, Washington, described as follows: Beginning at the NW corner of the said subdivision, thence along the North line of the said subdivision North 88°53'38" East 609.84 feet, thence leaving the said North Line South 00°13'27" West 1330.66 feet to the South line of the said subdivision, thence South 89°25'05" West 605.93 feet to the SW corner of the said subdivision, thence North 00°03'35" East 1325.03 feet to the NW corner of the said subdivision and the end of this description."
*4 New Parcel "B" was described as "That portion of the NW¼ of the SE¼ of Section 27, T24N, R17E W.M. Chelan County, Washington, described as follows: Beginning at the NW corner of the said subdivision, thence along the North line North 88°53'38" East 609.84 feet to the point of the beginning of this description, thence South 00°13'17" West 1330.66 feet to the South line of the said subdivision, thence along the said South line North 89°25'05" West 350.02 feet, thence North 00°13'29" East 1333.86 feet to the North line of the said subdivision, thence South 88°53'38" West 350.09 feet to the point of beginning and the end of this description."
New Parcel "C" was described as "That portion of the NW¼ of the SE¼ of Section 27, T24N, R17E W.M. Chelan County, Washington, described as follows: Beginning at the NW corner of the said subdivision, thence along the North line of the said Subdivision North 88°53'38" East 959.93 feet to the point of beginning of this description, thence South 00°13'29" West 1333.86 feet to the South line of the sad subdivision, thence North 89°25'05" East 350.04 feet to the NE corner of said subdivision, thence South 88°53'38" West 350.09 feet to the point of beginning and the end of this description."
On October 9, 1997, John W. Harrington, Jr., Administrator of the Chelan County Planning Department, approved the BLA application by signing a certificate of exemption and attaching a copy of the legal descriptions of new Parcels "A," "B" and "C" indicated by Petitioners in their application.[10] There was no public notice or hearing.[11] Mr. Harrington relied on Section 200 of the Chelan County Subdivision Resolution in approving Petitioners' BLA application, concluding that the original parcel was divided into three existing legal lots because the location of the creek and road created separate legal lots.[12] Approval of a BLA is based upon a requirement that the lot line adjustment not create new lots.[13] In his declaration Mr. Harrington stated that the BLA application requesting three "new" parcels did not create additional lots or building sites.[14]
As a condition for approval of the BLA application, Mr. Harrington required Petitioners to execute and record notices to title for each lot[15] to clarify that three lots resulted from the BLA and that any future attempt to apply section 200 would require approval through the subdivision process.[16] The notices to title resulting from the BLA, prepared by Chelan County, were signed by Petitioners and filed on October 9, 1997.[17]
In May 1998 Petitioners applied for conditional use permits (CUPs) to construct "three (3) single-family dwellings on a 33.5-acre lot outside an existing subdivision and within the Icicle Valley Design Review Overlay District."[18] The CUPs were set for hearing before the Zoning Adjuster on October 2, 1998.[19] At an Icicle Valley Design Review Committee hearing on July 20, 1998 several neighbors of Petitioners, now Respondents who intervened in this case,[20] raised concerns about the validity of the BLA and their *5 belief that Petitioners intended to use the proposed structures for transient overnight rentals.[21]
Previously on August 4, 1998 Joseph J. Straus, a neighbor and an attorney who is now an Intervenor in this case, addressed a letter to "Mr. James [sic] Harrington, Senior Staff Planner" asserting that the BLA was illegal and violated applicable Chelan County Code, Subdivision Code Section 302(8), RCW 58.17.040(2), boundary lot line adjustment criteria[22] provided in a Chelan County BLA application and case law.[23] Copies of the letter were sent to several Chelan County officials and the Icicle Valley Design Review Committee.[24] The Chelan County Planning Department reviewed the transaction and on August 25, 1998 withdrew the certificate of exemption issued by the Planning Director on October 9, 1997, thus effectively revoking the BLA.[25] A Planning Department staff report dated October 2, 1998 addressed to the Chelan County Zoning Adjuster concluded that the CUP proposal was not consistent with the Forest Resource Zoning District, the Icicle Design Review Overlay District, the Leavenworth Area Comprehensive Plan, and was "detrimental and injurious to the public health, safety and welfare and to the area adjoining the proposed project."[26] On October 6, 1998 the Zoning Adjustor declined to assume jurisdiction until the CUP applications were reviewed by the Icicle Valley Design Review Committee pursuant to Section 11.39B.040 of the Chelan County Comprehensive Zoning Resolution.[27]
On December 11, 1998 Chelan County filed in the Chelan County Superior Court this complaint "for declaratory judgment on the question of the propriety of Chelan County BLA 97-154 and the associated Notices to Title and Acknowledgments and Agreements and Statements of Consent and Waivers of Claims, given the applicable regulations of Chelan County and Washington State law."[28] A small group of neighbors, including Mr. Straus, filed a complaint in intervention on May 17, 1999.[29] In response, Petitioners asserted affirmative defenses and counterclaims alleging that damages should be awarded them under chapter 64.40 RCW if the court found in favor of Chelan County because the County's action approving the BLA was arbitrary, capricious, unlawful and exceeded lawful authority which was known or should have been known by its agents.[30]
Under the Uniform Declaratory Judgments Act, chapter 7.24 RCW, "Courts of record ... shall have power to declare rights, status and other legal relations whether or not further relief is or could be claimed. An action or proceeding shall not be open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect; and such declarations shall have the force and effect of a final judgment or decree." RCW 7.24.010.
Under RCW 7.24.020, "[a] person interested under a deed, will, written contract or other writings constituting a contract, or whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, *6 ordinance, contract or franchise and obtain a declaration of rights, status or other legal relations thereunder." A municipal corporation "of any character whatsoever" is included in the definition of "person" under RCW 7.24.130.
On September 30, 1999 Petitioners moved the court for partial summary judgment to dismiss all claims brought by Respondents on June 16, 1999 and for final judgment.[31] Respondents on October 4, 1999 similarly moved for summary judgment. On November 5, 1999 the Chelan County Superior Court, the Honorable John E. Bridges, granted Chelan County's motions for summary judgment, ruling that the County properly exercised its authority in revoking an erroneously approved BLA, and dismissed Petitioners' counterclaims for damages.[32]
On November 30, 1999 Petitioners filed an appeal to the Court of Appeals, Division Three, of the order granting Respondents' summary judgment motions.[33] On May 25, 2000, the court granted interested parties leave to file briefs amicus curiae.[34] On March 22, 2001, the Court of Appeals, the Honorable Frank L. Kurtz writing, affirmed the summary judgments of the Chelan County Superior Court, concluding that LUPA did not bar Respondents' action challenging the validity of the County's own BLA decision.[35] The Court determined that although a BLA seems to fall within the definition of a "land use decision" under LUPA, the Act applies only to quasi-judicial decisions and not to ministerial decisions such as the BLA in this case.[36] The Court reasoned that because LUPA replaces the writ of certiorari for appeal of land use decisions and such writs are limited to review of only quasi-judicial decisions, LUPA is similarly limited and does not apply to BLA decisions.[37]
Petitioners sought review by this court. It was granted on October 2, 2001.[38]

DISCUSSION
The central issue in this appeal is whether the Court of Appeals, Division Three, was correct in holding that the LUPA applies only to quasi-judicial land use decisions and not to ministerial decisions such as a boundary line adjustment (BLA) decision by Chelan County.
LUPA pertains to judicial review of all land use decisions with some exceptions noted in the statute.[39] Prior to enactment of LUPA, an aggrieved person could challenge a county's land use decision through a writ of certiorari.[40] In enacting LUPA in 1995, the Legislature replaced the writ of certiorari for appeal of land use decisions as stated in RCW 36.70C.030[41] and determined that *7 LUPA "shall be the exclusive means of judicial review of land use decisions," with certain specific exceptions.[42] LUPA's stated purpose "is to reform the process for judicial review of land use decisions made by local jurisdictions, by establishing uniform, expedited appeal procedures and uniform criteria for reviewing such decisions, in order to provide consistent, predictable, and timely judicial review."[43] "A land use petition is barred, and the court may not grant review, unless the petition is timely filed with the court.... The petition is timely filed if it is filed ... within twenty-one days of the issuance of the land use decision."[44]
According to Petitioners, judicial review of the Chelan County BLA decision should have been barred because the County did not timely file a petition for review within 21 days under LUPA.[45] Petitioners point out that the County's challenge on December 11, 1999 seeking declaratory relief from the October 9, 1997 BLA approval was filed nearly 14 months beyond the 21 day deadline.[46]
Respondents, to the contrary, maintain that LUPA does not apply in this case. They assert that LUPA is designed to allow appeals of only quasi-judicial decisions because those decisions provide interested parties with notice of the decisions and an opportunity to conform with LUPA's 21 day appeal period;[47] and since no public notice or hearing is required for approval of a BLA under Chelan County ordinances, then the BLA decision was a ministerial act not subject to LUPA.[48]
Agreeing with Respondents, the Court of Appeals reasoned that although LUPA does not explicitly limit its application to quasi-judicial decisions, its language implicitly supports a conclusion that ministerial decisions are outside its scope.[49] The court acknowledged that RCW 36.70C.030(1) states LUPA "replaces the writ of certiorari for appeal of land use decisions," and noted that the writ of certiorari is granted "when an inferior tribunal, board or officer, exercising judicial functions, has exceeded" its jurisdiction "or to correct any erroneous or void proceeding, or a proceeding not according to the course of the common law."[50] The court therefore reasoned that, because writs of certiorari apply only to quasi-judicial decisions, LUPA is similarly limited to quasi-judicial decisions.[51]
Petitioners contend that even if LUPA does not apply to ministerial land use decisions, Mr. Harrington's approval of the BLA application was not a purely ministerial act because he exercised discretion in interpreting and applying Section 200 and determining that the facts in this case met the *8 substantive criteria for a BLA approval.[52] Several Washington Court of Appeals cases cited by Petitioners, R/L Associates, Inc. v. Klockars and Cox v. City of Lynnwood, characterized BLAs as quasi-judicial acts.[53] The Court of Appeals, however, distinguished those cases on the procedural posture of each.[54]
In R/L Associates, R/L applied to the City of Seattle for a boundary lot adjustment proposing to shift a lot line running horizontally to bisect its parcel vertically.[55] The Director of Land Use and Construction rejected R/L's application.[56] R/L appealed the Director's decision to the City Hearing Examiner who affirmed the decision.[57]
The Court of Appeals, Division One, concluded in this case that the BLA decision in R/L was quasi-judicial, as was the decision in Cox.[58] In that case the Court of Appeals, Division One, determined that the City of Lynnwood's denial of Mr. Cox's BLA application was a quasi-judicial act and not a ministerial act because Lynnwood looked beyond the provisions of its own code, thus constituting a policy decision and not a ministerial act.[59]
The Court of Appeals determination in this case that LUPA is the exclusive means of review of only quasi-judicial decisions relies upon Washington case law which predated LUPA (enacted in 1995) and its own post-LUPA decision in Larsen v. Town of Colton decided in 1999.[60] That determination is questionable.
Before LUPA, a line of Washington cases held that an improperly approved building permit is void and may be rescinded by the agency which erroneously issued it.[61] Those cases were based upon holdings that a building permit issued in violation of law or under mistake of fact conferred no vested right in the applicant.[62]
In the 1923 case of Nolan v. Blackwell, a building permit for a wood structure was erroneously issued in a zone that allowed only brick buildings.[63] The applicant began construction and continued even after the city inspector informed him the permit had expired and was canceled. He then sought to enjoin the city and its officers from interfering with his occupancy and use of the completed building.[64] This court held that an improperly issued building permit conferred no rights and ordered the building demolished.[65] Similarly in Roanoke Associates this court held that the defendant had no vested right to continue construction even though the building permit was issued two years previously.[66]Roanoke Associates reaffirmed the rule that no rights vest where the application submitted or the permit issued *9 does not conform to zoning ordinances or building codes.[67]
Although not binding on this court, some Court of Appeals cases have discussed the appropriate remedy an aggrieved property owner should seek.[68]Radach v. Gunderson and City of Mercer Island v. Steinmann concluded that an injunctive remedy for a zoning violation is proper when a governmental agency issues an invalid building permit.[69] Those cases remained consistent with precedent in holding that a governmental agency is not precluded from enforcing zoning ordinances even if its officers improperly issued building permits contrary to the ordinances.[70] Analogizing those cases to this case, the Court of Appeals concluded that this case is similar to an action for injunctive relief seeking to prevent a zoning violation.[71]
Petitioners argue that cases decided prior to LUPA are no longer applicable to land use decisions.[72] In response, the Court of Appeals relied upon Larsen v. Town of Colton, its own decision the Respondents claim resolved the conflict between LUPA and cases predating it.[73]
In Larsen, the Tiltons owned two adjacent residential lots: on one lot was a single-family home and an attached garage, and on the other lot they proposed to build another garage in which Mr. Tilton could pursue his hobby of restoring old vehicles.[74] A building permit was issued on February 5, 1997. The Tiltons' neighbor, Mr. Larsen, became aware of the building permit on May 6, 1997 and filed a complaint for injunctive relief.[75] On reconsideration and later on appeal, the Tiltons asserted that Mr. Larsen's only remedy for relief was under LUPA and his failure to file for review within the 21 day appeal period invalidated the superior court's decision because it did not have subject matter jurisdiction.[76]
Although acknowledging that "LUPA is the exclusive means of obtaining judicial review of land use decisions," the Court of Appeals in Larsen also noted that LUPA requires an aggrieved person to file a petition for review within the 21 day limitation period.[77] The court predicated its decision on the standing provision of LUPA, determining that because the building inspector was not required to consider the Larsens' interests, the Larsens were not an "aggrieved person" under LUPA and thus not required to comply with its provisions.[78]
After deciding LUPA did not apply, the court in Larsen focused on the timeliness of the Larsens' declaratory action.[79] Relying on Brutsche v. City of Kent,[80] the court held that a reasonable time for initiating a declaratory action is "`determined by analogy to the time allowed for appeal of a similar decision as prescribed by statute, rule of court, or other provision.'"[81] Such a bright line rule, the court noted, "`will serve the public interest by giving decision makers, land owners, and citizens a clear deadline by which a land use decision, if not appealed, is final.'"[82] But addressing the due process *10 concern raised by the superior court,[83] the court characterized land use decisions as either quasi-judicial or ministerial.[84] It suggested that a short limitation period has merit in appeal of a quasi-judicial decision, as opposed to a ministerial decision in which an aggrieved person may not have notice or actual knowledge of the decision before the appeal period deadline.[85] In allowing the Larsens' complaint for injunctive relief to proceed, the court reaffirmed the rule announced in pre-LUPA decisions.
Respondents contend Larsen and the preceding cases stand as an exception to LUPA when a governmental agency erroneously issuing a land use decision has the legal right to revoke the act at any time.[86] In accord with this argument, the Court of Appeals extended the Larsen theory of land use decisions to LUPA. In acknowledging due process problems when applying Brutsche`s rule to ministerial decisions, the court in Larsen concluded actual or constructive knowledge should be the triggering event for a reasonable time period.[87] It did not, however, directly address this concern in a LUPA context because it concluded LUPA was not applicable.
Even though concluding the land use decision in that case was ministerial, the court in Larsen did not negate the appeal limitation rule, as did the Court of Appeals in this case in concluding that the ministerial distinction governed application of LUPA.[88] The court in Larsen sought finality, ruling that commencement of an action contesting a building permit one week after actual or constructive knowledge was within a reasonable time, as opposed to Brutsche, in which initiation of an action was considered untimely 73 days after a zoning ordinance was passed.
Larsen, in any event, does not advance Respondents' arguments for two reasons. First, the due process concern in Larsen focused on the ability of an aggrieved party, who did not have notice or knowledge of a ministerial land use decision, to challenge within a reasonable time. In this case, Chelan County, because of approval of the BLA on October 9, 1997 by its Planning Director, had knowledge of its own decision for 14 months prior to filing this declaratory judgment action on December 11, 1998.[89] Second, even if we were to consider Larsen as controlling authority, this case is timed-barred because appeal of the BLA decision was not brought within a "reasonable time." The Intervenors had knowledge of the BLA at least on August 4, 1998 when Intervenor Straus sent a letter to Chelan County officials challenging the propriety of the BLA. Applying that date for purpose of notice, neither Intervenors nor Chelan County brought this declaratory judgment action within a "reasonable time from the date of approval of the BLA on October 9, 1997."
Respondents ask this court to adopt and extend the ministerial/quasi-judicial distinction in Larsen to this case, a distinction this court has not previously made in the LUPA context and does not now make. This case, however, is more analogous to Wenatchee Sportsmen Association v. Chelan County which addressed the issue whether "a party's failure to timely appeal a county's approval of a site-specific rezone bar[s] it from challenging the validity of the rezone in a later ... [action]."[90] In 1996, Chelan County improperly rezoned property to allow residential subdivisions inconsistent with the *11 County's interim urban growth area regulation (IUGA).[91] In 1998, the County later approved a plat application for residential development.[92] Wenatchee Sportsmen Association filed a LUPA petition challenging approval of the 1998 plat application, arguing that the residential development outside of the IUGA violated the Growth Management Act, chapter 36.70A RCW.
This court concluded that, although the residential project constituted impermissible urban growth outside of the IUGA, a challenge of the rezone should have been raised in a timely LUPA action within 21 days of the 1996 action and not in the later challenge of the 1998 plat approval.[93] The court stated:
Under LUPA "[a] land use petition is barred, and the court may not grant review unless the petition is timely filed...." The petition is timely filed if it is filed within 21 days of the issuance of the land use decision.... Because RCW 36.70C.040(2) prevents a court from reviewing a petition that is untimely, approval of the rezone became valid once the opportunity to challenge it passed. It was too late for [Wenatchee Sportsmen Association] to challenge approval of the rezone in a LUPA petition filed in 1998.... If there is no challenge to the decision, the decision is valid, the statutory bar against untimely petitions must be given effect, and the issue of whether the zoning ordinance is compatible with IUGA is no longer reviewable.[[94]]
(Emphasis added).
Under Wenatchee Sportsmen Association, approval of the BLA in this case, despite its questionable legality, "became valid once the opportunity to challenge it passed."[95] Under this court's rationale in Wenatchee Sportsmen, the superior court should have dismissed Respondents' declaratory relief action because it was time-barred under the 21 day appeal time limit of LUPA. Although the proceeding in Wenatchee Sportsmen is denominated a writ of certiorari, it is also referred to in the same section of the code as an "appeal" and a definite time limit is provided. Compliance with such time limit is essential for the court to acquire "jurisdiction."[96]

APPLICABILITY OF LUPA
"When statutory language is plain and unambiguous, the statute's meaning must be derived from the wording of the statute itself."[97] "If the language of a statute is clear on its face, courts must give effect to its plain meaning and should assume the Legislature means exactly what it says."[98] "In ascertaining the legislative intent in the enactment of a statute, the state of the law prior to its adoption must be given consideration. But where ... a statute is plain and unambiguous, it must be construed in conformity to its obvious meaning without regard to the previous state of the common law."[99] This court is "obliged to give the plain language of a statute its full effect, even when its results may seem unduly harsh."[100]
The Court of Appeals agrees that a BLA "modifies real property" within the definition of a "land use decision," but it relies on the ministerial/quasi-judicial distinction to negate application of LUPA.[101] This distinction *12 is not consistent with the intent and express language of LUPA.

Review of Land Use Decisions
A plain reading of the language of LUPA leads to a conclusion that it applies to both ministerial and quasi-judicial land use decisions. Under LUPA a land use decision is defined as:
(1) ... a final determination by a local jurisdiction's body or officer with the highest level of authority to make the determination, including those with authority to hear appeals, on:
(a) An application for a project permit or other governmental approval required by law before real property may be improved, developed, modified, sold, transferred, or used.... [[102]]
Prior to amendment of Chelan County's current Subdivision Resolution,[103] there were no clearly defined procedures for consideration and review of BLA decisions, although BLA applications were available. Charged with the duty to consider and approve or deny BLA applications, John W. Harrington, Jr., Planning Director, was the Chelan County officer with the highest authority to make a final determination on Petitioners' BLA application.
During Mr. Harrington's tenure as Planning Director, he interpreted Section 200 of the Chelan County Subdivision Resolution to allow creation of separate parcels within a single parcel when the parcels are separated by a public road or a stream in excess of 20 cubic feet per second mean annual flow.[104] He also concluded that because no new lots were created, the proposed BLA fit within the exemption from subdivision requirements under Section 302 of the Chelan County Subdivision Resolution.[105]
Respondents sought review, arguing that the Chelan County Planning Director, Mr. Harrington, misinterpreted Section 200 in approving Petitioners' BLA application. The Court of Appeals agreed, stating "the language concerning parcels separated by a road or stream relates to the definition of land `as a unit for determining subdivision,' and does not create `lots' based on the location of a road or stream."[106] The court also observed that Old Parcel B and C did not meet minimum zoning area and dimension requirements. The Court concluded that any mechanism dividing property into separate *13 parcels must comply with chapter 58.17 RCW relating to plats, subdivisions and dedications and that the interpretation of Section 200 by Mr. Harrington under which he created three new parcels did not meet the requirements of RCW 58.17.040(6).[107]
The Respondents' declaratory judgment action challenging the validity of the BLA and Mr. Harrington's interpretation of county ordinances is the kind of action contemplated for review under LUPA. RCW 36.70C.130(1)(b) grants relief if the "land use decision is an erroneous interpretation of the law" or "is a clearly erroneous application of the law to the facts."[108]
This court has previously indicated that ministerial land use decisions are reviewed under LUPA. To determine whether a project permit included site-specific rezones, this court in Wenatchee Sportsmen relied on RCW 36.70B.020(4), which reads:[109]
(4) "Project permit" or "project permit application" means any land use or environmental permit or license required from a local government for a project action, including but not limited to building permits, subdivisions ... permits or approvals required by critical area ordinances, site-specific rezones....
Building permits are subject to judicial review under LUPA. Historically, actions on building permits have been characterized by this court as ministerial determinations,[110] which answers the question whether LUPA applies to ministerial land use decisions.
In addition, LUPA's scope of review includes both quasi-judicial and ministerial decisions. RCW 36.70C.120 reads in part:
(1) When the land use decision being reviewed was made by a quasi-judicial body or officer ... judicial review of factual issues ... shall be confined to the record created by the quasi-judicial body or officer, except as provided in subsection (2) through (4) of this section.
. . . .
(3) For land use decisions other than those described in subsection (1) of this section, the record for judicial review may be supplemented by evidence of material facts that were not made part of the local jurisdiction's record.
(Emphasis added.)
Subsection (1) considers that some land use decisions will be determined by a quasi-judicial body or officer. However, subsection (3) indicates that LUPA contemplates that some land use decisions may be made by other bodies or officers.

Exclusive Means of Judicial Review
RCW 36.70C.030(1) states that "This chapter replaces the writ of certiorari for appeal of land use decisions and shall be the exclusive means of judicial review of land use decisions, except that this chapter does not apply to .... [enumerated exceptions not relevant to this case]." (Emphasis added.)
While LUPA states that it replaces the writ of certiorari, it does not limit judicial review to quasi-judicial land use decisions. In fact it expressly states that LUPA "shall be the exclusive means of judicial review of land use decisions." (Emphasis added.)
The common law writ of certiorari has been codified in chapter 7.16 RCW as the writ of review, which generally grants review of only quasi-judicial determinations.[111] The Court of Appeals reads LUPA to include that same limitation. However, LUPA makes no reference to chapter 7.16. RCW. Reading LUPA together with chapter 7.16 RCW to ascertain legislative intent is not consistent with rules of statutory interpretation.[112] "In ascertaining the legislative intent in the enactment of a statute, the state of the law prior to its adoption must be given consideration. *14 But where ... a statute is plain and unambiguous, it must be construed in conformity to its obvious meaning without regard to the previous state of the common law."[113]
Construing the express language of RCW 36.70C.030(1) ("[t]his chapter replaces the writ of certiorari for appeal of land use decisions and shall be the exclusive means of judicial review of land use decisions") (emphasis added) according to its obvious meaning without regard to previous common law or, in this case, chapter 7.16. RCW, all land use decisions are subject to LUPA unless specifically excluded under RCW 36.70C.030.[114]

FINALITY
Respondents rely on the ministerial/quasi-judicial distinction in arguing that a county cannot be prevented from revoking an improperly issued land use approval under res judicata or in the interest of administrative finality. They maintain that res judicata applies only in the quasi-judicial context and never applies to purely ministerial approvals.[115] However, language used by this court referring specifically to land use decisions and a plain reading of LUPA leads to a contrary conclusion.[116]
Applying LUPA and following this court's decision in Wenatchee Sportsmen in this case is consistent with this court's stringent adherence to statutory time limits. This court has
also recognized a strong public policy supporting administrative finality in land use decisions. In fact, this court has stated that "[i]f there were not finality [in land use decisions], no owner of land would ever be safe in proceeding with development of his property.... To make an exception... would completely defeat the purpose and policy of the law in making a definite time limit." [[117]]
Following this policy of finality of land use decisions, this court in Wenatchee Sportsmen Association held that an untimely petition under LUPA precluded collateral attack of the land use decision and rendered the improper approval valid.[118]
The express language in LUPA also supports finality in land use decisions. RCW 36.70C.040(2), (3) and (4) read:
(2) A land use petition is barred, and the court may not grant review, unless the petition is timely filed with the court and timely served....
(3) The petition is timely if it is filed and served ... within twenty-one days of the issuance of the land use decision.
. . . .
(4) For the purposes of this section, the date on which a land use decision is issued is:
. . . .
(c) [T]he date the decision is entered into the public record.
(Emphasis added.)
The language in LUPA is clear: A petition for judicial review of a land use decision is barred unless timely filed within 21 days of issuance of the decision. This declaratory judgment action was filed by Chelan County on December 11, 1998, 14 months after Petitioners' BLA application was approved by the Chelan County Planning Director and recorded on October 9, 1997. Dismissal of this action is consistent with the express purpose of LUPA, which states:
The purpose of this chapter is to reform the process for judicial review of land use *15 decisions made by local jurisdictions, by establishing uniform, expedited appeal procedures and uniform criteria for reviewing such decisions, in order to provide consistent, predictable, and timely judicial review.[[119]]
To allow Respondents to challenge a land use decision beyond the statutory period of 21 days is inconsistent with the Legislature's declared purpose in enacting LUPA. Leaving land use decisions open to reconsideration long after the decisions are finalized places property owners in a precarious position and undermines the Legislature's intent to provide expedited appeal procedures in a consistent, predictable and timely manner.[120]
As amici curiae point out, if this court allows local government to rescind a previous land use approval without concern of finality, innocent property owners relying on a county's land use decision will be subject to change in policy whenever a new County Planning Director disagrees with a decision of the predecessor director.[121] They also assert that land use decisions from this court emphasize the need for property owners to rely on an agency's determinations with reasonable certainty.[122]

STANDING
Under LUPA standing to bring a land use petition is limited to the applicant or property owner to whom the land use decision is directed or a person aggrieved or adversely affected by the land use decision.[123]
Respondents maintain that LUPA does not contemplate an appeal of a land use decision by the same governmental agency that issued it. They contend that LUPA applies when the property owner or an aggrieved person seeks judicial review of a quasi-judicial decision.[124] Although Respondents correctly assert that property owners or aggrieved persons have standing to bring a land use appeal under LUPA, they apparently overlook the fact that LUPA defines person as "an individual ... or governmental entity or agency."[125] A governmental agency such as Chelan County is thus a person under LUPA.
The next issue is whether Chelan County is an aggrieved person. "A person is aggrieved or adversely affected ... when all of the following conditions are present:"[126]
(a) The land use decision has prejudiced or is likely to prejudice that person;
(b) That person's asserted interests are among those that the local jurisdiction was required to consider when it made the land use decision;
(c) A judgment in favor of that person would substantially eliminate or redress the prejudice to that person caused or likely to be caused by the land use decision; and
(d) The petitioner has exhausted his or her administrative remedies to the extent required by law.
Applying the facts of this case to each condition, we reasonably conclude that Chelan County is an aggrieved or adversely affected person under LUPA.
Observing that there is no case law interpreting the "prejudice or is likely to prejudice" requirement in LUPA,[127] the Court of Appeals, Division One, compared the LUPA standing provision to the Administrative Procedure Act (APA) provision concerning standing.[128] The prejudice requirement in the APA is a codification of the injury-in-fact *16 requirement.[129] After review of Washington land use cases, the court derived some general principles which seem applicable in this case. "In general, parties owning property adjacent to a proposed project and who allege that the project will injure their property have standing."[130] "[A] party need not show a particular level of injury in order to establish standing" to bring an action under LUPA.[131] As neighbors of Respondents alleging injury to their property because of the BLA and proposed development, Intervenors in this case might satisfy the prejudice requirement.
Contrary case law directly discussing standing under LUPA, however, suggests that Intervenors do not have standing. An interest sufficient to support standing to sue, however, must be more than simply the abstract interest of the general public in having others comply with the law.[132] Intervenors maintain that their "sole interest in this matter is to preserve the protections of the zoning in the district in which they are located."[133] Without alleging more specific injuries adversely affecting them or their property, Intervenors in this case have not established that they are prejudiced within the meaning of an "aggrieved person" under LUPA.[134]
Generally, cases discussing "injured parties" in the context of land use decisions refer to parties other than government entities. However, recently this court decided Skamania County v. Columbia River Gorge Commission, in which one government entity challenged the land use decision of another government entity.[135]
In Skamania, under the Columbia River Gorge National Scenic Area Act, the Columbia Gorge Commission was charged with ensuring compliance with the Act and related county ordinances for land uses within Scenic Areas.[136] Skamania County's ordinances required applicants for land uses within the Scenic Area to submit their applications to the County's Department of Planning and Community Development. Upon approval by the Department director, the Commission then reviewed the decision to ensure compliance. Absent an appeal by the applicant or "interested party" within the Act's statutory limit of 30 days from the date of issue, the decision becomes final.[137] More than one year later, a group of concerned citizens brought to the attention of the Gorge Commission that the County's decision was in violation of the Act and County ordinances.[138] As a result, the Commission challenged the land use decision. Since the Commission had the duty to ensure compliance with the Act, this court concluded it was "undeniably an `entity' that [was] `adversely affected' by a final county land use decision in conflict with the Act."[139]
The more definitive issue in this case is whether a governmental entity, Chelan County, can be prejudiced or injured by the erroneous interpretation and application of law of its own agent, its Director of Planning. Similar to the dispute in Skamania, the dispute in this case is over the interpretation of the Chelan County Code by the Chelan County Planning Director and his approval of *17 the BLA and subsequent revocation by Chelan County. Chelan County disagreed with Mr. Harrington's interpretation and contingent BLA approval and challenged it by filing a declaratory action 14 months later, arguing that the improper BLA created three building sites instead of two building sites and was thus in violation of County Codes and zoning ordinances.[140] Underlying this challenge is the County's interest in protecting the integrity of its County Codes and zoning ordinances. The inability to enforce its own laws clearly prejudices Chelan County. We thus conclude the land use decision by Mr. Harrington prejudiced or was likely to prejudice Chelan County.
Comparing the standing provisions of the APA, RCW 34.05.530, with the standing provisions of LUPA, RCW 36.70C.060, the conditions for establishing standing are quite similar in language. They both involve the injury-in-fact requirement. A judgment in favor of Chelan County permitting it to rescind the BLA approval would set aside the action of its agent, Mr. Harrington, who authorized the BLA contrary to County Codes and zoning ordinances, thus satisfying the third condition.
The second condition involves the "zone of interest test."[141] "[A]lthough the zone of interest test serves as an additional filter limiting the group which can obtain judicial review of an agency decision, the `test is not meant to be especially demanding.'"[142] "The test focuses on whether the Legislature intended the agency to protect the party's interest when taking the action at issue."[143]
As did the county in Skamania, Chelan County in this case has an interest in enforcing and protecting the integrity of its County Codes and zoning ordinances. In acting upon Petitioners' BLA application, the Chelan County Planning Department required that the Chelan County zoning codes be taken into account.[144] Having authority to review and approve BLA applications, Mr. Harrington as Director of Planning considered the interests of Chelan County when he granted the BLA request of Petitioners.
To have standing to bring a petition under LUPA, a party must exhaust administrative remedies.[145] The appeal must be from a final governmental decision.[146] "The doctrine of exhaustion of administrative remedies is well established in Washington. In general, agency action cannot be challenged on review unless all rights of administrative appeal have been exhausted."[147] Under Chelan County procedures for approval of a BLA, Mr. Harrington, Planning Director, served as the decision maker with authority to make a final determination. His approval of Petitioners' BLA was not administratively appealable. Thus any administrative remedies available to Chelan County were "exhausted" because there was nothing from which an administrative appeal could be taken.

DAMAGES
We do not address Petitioners' claim for damages because our decision is in their favor.

*18 SUMMARY AND CONCLUSIONS

The decision of the Chelan County Planning Director in approving the boundary line adjustment application of Petitioners on October 9, 1997, with recordation on that date, constituted a land use decision by Chelan County. LUPA, chapter 36.70C RCW, enacted by the Legislature in 1995, pertains to judicial review of all land use decisions (with some exceptions not material here). The Act replaced the writ of certiorari for appeal of land use decisions and determined that LUPA "shall be the exclusive means of judicial review of land use decisions."
Under LUPA a land use petition is barred, and the court may not grant review, unless the petition is timely filed with the court "within twenty-one days of the issuance of the land use decision."
Chelan County, after determining that its own planning director on October 9, 1997 had erroneously approved the boundary line adjustment requested by Petitioners based upon the County's later conclusion that the planning director had misinterpreted the County's ordinances, on August 25, 1998 withdrew the certificate of exemption (authorizing the boundary line adjustment) and denied the conditional use permits after Petitioners applied for conditional use permits in May 1998.
Chelan County then on December 11, 1998 filed in the Chelan County Superior Court this declaratory judgment action challenging the propriety of the boundary line adjustment granted by its own planning director on October 9, 1997. A ruling in favor of the County was appealed to the Court of Appeals, Division Three, which affirmed the decision.
The Court of Appeals concluded that LUPA applies only to quasi-judicial decisions and not to ministerial decisions; that the decision by the planning director was ministerial and LUPA therefore does not apply to this action. The court thus concluded that this action by Chelan County, not being subject to LUPA, did not require appeal "within twenty-one days." The court approved the action for declaratory judgment which was not brought by Chelan County until 14 months after the October 9, 1997 decision of its planning director.
The Court of Appeals was in error in its conclusion. LUPA does not distinguish between quasi-judicial decisions and ministerial decisions. LUPA does indeed apply to this land use decision, the Act being the "exclusive means of judicial review of land use decisions" (with exceptions not material in this case). It therefore makes no difference whether the boundary line adjustment decision by the Chelan County Planning Director was quasi-judicial or ministerial. An appeal from that action may be brought only under LUPA and within the 21 day time limit specified in the Act.
Chelan County, not having met the 21 day time limit for appeals, cannot under LUPA bring this action before the Superior Court 14 months after the decision of its own planning director. Despite the boundary line adjustment decision of its planning director, the County still has the authority to act upon future applications by Petitioners for necessary permits under Chelan County ordinances.
The Court of Appeals, Division Three, was in error in concluding that the boundary line adjustment decision by the Chelan County Planning Director on October 9, 1997 was a ministerial act not covered by LUPA and thus not subject to the 21 day limit for appeals because LUPA applies only to quasi-judicial land use decisions.
SANDERS, IRELAND, BRIDGE, and CHAMBERS, JJ., concur.
ALEXANDER, C.J. (dissenting).
The majority concludes that the challenge of Chelan County (County) and the intervening parties (Neighbors) to Michael and Laurie Nykreim, Rick and Vickie Whitney, and William and Jane Kelly's (Nykreim) boundary line adjustment (BLA) is time-barred because it was not filed within the prescribed 21 days for filing petitions for judicial review of land use decisions under the Land Use Petition Act (LUPA), chapter 36.70C RCW. In reaching that conclusion, the majority holds that, under LUPA, County had standing to challenge the validity of its own BLA *19 decision. I disagree with that determination because County is not, in my view, a person "aggrieved or adversely affected" by its own land use decision. RCW 36.70C.060(2). That being the case, I fail to see how LUPA and its 21-day time bar apply to this action. I would, therefore, affirm the decision of the Court of Appeals. Because the majority does otherwise, I dissent.

I.
The essential facts are undisputed. In July 1997, Nykreim purchased as tenants in common approximately 40 acres of land near Leavenworth. The northwest corner of this property is traversed at one location by Icicle Road and at another location by Icicle Creek. Although the deed to the property described the property as a single parcel, Nykreim applied to County to adjust the boundaries of three purported "parcels" within the property. A map accompanying Nykreim's application showed three existing, irregular parcels denominated: "Old Parcel C" located at the northwest corner of the property and covering land north of Icicle Road; "Old Parcel B" spanning the portion of land between Icicle Road and Icicle Creek; and "Old Parcel A" describing the remainder of the property.[1] Clerk's Papers (CP) at 393. Nykreim sought to create "new parcels A, B, and C consisting of three rectangular lots with parallel boundaries."[2]
In October 1997, the director of County's Planning Department, John Harrington, approved Nykreim's BLA application by signing a "certificate of exemption," which exempted the BLA from Chelan County Subdivision Resolution requirements.[3] CP at 243-46. Harrington based his approval of Nykreim's application on his interpretation of County's requirement that no new lots be created as a result of the BLA.[4] Because it appeared from the application that no new lots were being created, the certificate was issued without the benefit of any public notice or hearing.[5] In fact, Harrington testified that he believed the adjustment was lawful because the property already contained three lots due to the location of the road and creek. Notices of title to the three new lots were filed the same day as the certificate of exemption.
Seven months later, in May 1998, Neighbors first learned of the BLA when Nykreim applied for a conditional use permit to construct three new homesone on each "new" parcel of land. Neighbors appeared at a Design Review Committee hearing in July 1998 to voice their objections to the new boundary lines and raise concerns about the validity of the BLA. Shortly thereafter, one of the neighbors, an attorney, wrote a letter to Harrington in which he claimed that the BLA was illegal. The County Planning Department responded to the letter by indefinitely postponing the design review hearing. On August 25, 1998, the Planning Department officially withdrew Nykreim's certificate of exemption.
Approximately three months after revoking Nykreim's BLA, County filed an action *20 for declaratory judgment asserting that Nykreim's BLA and the notices of title were invalid. Neighbors sought to intervene in support of County and the trial court permitted them to do so. The trial court then granted County's summary judgment motion, holding that the BLA was null and void. The Court of Appeals affirmed the trial court's decision, rejecting Nykreim's affirmative defense, raised for the first time on appeal, that Chelan County was time-barred from revoking its BLA decision under LUPA.[6] We, thereafter, granted Nykreim's petition for review.

II.
In reaching its conclusion that County's challenge to Nykreim's BLA is time-barred, the majority holds that LUPA applies to ministerial land use decisions of government planning agencies. Although I question the correctness of that holding for the reason that a person aggrieved by a ministerial decision will likely not have notice or actual knowledge of the decision within the time for appeal, I do not believe that it is necessary for us to decide here whether LUPA applies to ministerial land use decisions. I reach that conclusion because County cannot be viewed as a party "aggrieved or adversely affected" by its own land use decision. See RCW 36.70C.060.[7] It, therefore, lacked standing under LUPA and, thus, was not subject to the provision in LUPA requiring "aggrieved or adversely affected" parties to challenge land use decisions within 21 days.
Although the majority observes that an "aggrieved or adversely affected" person "in the context of land use decisions [generally] refer[s] to parties other than government entities" (majority at 16), it concludes that County was sufficiently prejudiced by its own BLA decision so that the "aggrieved or adversely affected" person element necessary for standing was satisfied. In support of that conclusion the majority relies on our decision in Skamania County v. Columbia River Gorge Commission, 144 Wash.2d 30, 26 P.3d 241 (2001), where we concluded that the Columbia River Gorge Commission, a government entity, was "undeniably an `entity' that [was] `adversely affected' by a final county land use decision in conflict with the [Columbia River Gorge National Scenic Area] Act, [16 U.S.C. § 544]." Id. at 47, 26 P.3d 241. The majority posits that like the Gorge Commission in Skamania County, "Chelan County[] can be prejudiced or injured by the erroneous interpretation and application of law of its own agent, its Director of Planning." Majority at 16.
In my view, the majority's analysis is incorrect because it fails to recognize that in Skamania County the Gorge Commission was not challenging its own decision. Rather, it sought to invoke its statutory authority to either "modify, terminate[ ], or set aside" or to "enforce" a Skamania County land use decision. Skamania County, 144 Wash.2d at 37, 46, 26 P.3d 241. That distinction is, in my judgment, very significant to this case for two reasons. First, 16 U.S.C. § 544(m)(a) specifically vests the Gorge Commission with the authority to "modify, terminate, or set aside" and to "enforce" a county's final land use decision, whereas LUPA contains no similar provision with respect to County. What is more significant is that, contrary to the majority's suggestion, Skamania County was not seeking to challenge its own decision. Indeed, Skamania County was a defendant in the enforcement action brought by the Gorge *21 Commission. Although I agree with the majority that one government entity may be aggrieved or adversely affected by the decision of another, as was the case in Skamania County, no party is asserting here that County was prejudiced by action of any entity other than itself.
The view that I espouse, that County lacked standing to seek judicial review of its own decision, is consistent with the reasoning employed by the United States Supreme Court in Director, Office of Workers' Compensation Programs v. Newport News Shipbuilding & Dry Dock Co., 514 U.S. 122, 115 S.Ct. 1278, 131 L.Ed.2d 160 (1995). There the Court said that the "status of the Government as a statutory beneficiary ... must be sharply distinguished from the status of the Government as regulator or administrator." Id. at 128, 115 S.Ct. 1278. It then indicated that a government agency acting within its regulatory or administrative capacity should not be conferred standing "under an `adversely affected or aggrieved' statute [because to confer such standing] would put the ... courts into the regular business of deciding intrabranch and intraagency policy disputesa role that would be most inappropriate." Id. at 129, 115 S.Ct. 1278.
The reasoning of the Supreme Court in Newport News Shipbuilding makes sense to me. In my opinion, we should be reluctant to place the courts in a position of reviewing agency policy decisions. After all, deference is due to a government agency's decision in areas of its expertise. Unfortunately, the majority confers standing to any government entity wishing to appeal its own land use decision under LUPA. It also subjects that entity to LUPA's 21-day time bar. This result flies in the face of the government's inherent power to enforce its zoning laws. Furthermore, it is fatal to any future modification or withdrawal of a planning decision in cases where the government planning agency, like County, has failed to appeal its own land use decision. Although certainly not intended, the majority's decision may force an absurd result, i.e., agencies appealing decisions they make in good faith simply in order to avoid being foreclosed from changing the decision after 21 days if they become convinced that the earlier decision was wrong. Finally, I would observe on this point that if the 21-day period should run against any party, it is Nykreim. I say that because from the time County changed its mind and reversed its earlier decision, Nykreim became a party aggrieved and, thus, had standing under LUPA to appeal.

III.
While the merits of this case can be resolved with respect to Chelan County alone, I believe that brief mention of the position of Neighbors, as intervenors, is warranted.[8] To be sure, the effect of the majority's decision with respect to Neighbors is unsettling because it underscores the manifest unfairness of affording Neighbors no opportunity, notice, or hearing to challenge a land use decision that adversely affects their property interests.[9] This result is even more problematic because Neighbors likely do not have standing under LUPA.[10]

IV.
In sum, I agree with the Court of Appeals that LUPA does not apply here because County was not aggrieved or adversely affected by its own decision. I would hold, therefore, that the 21-day limit for appeals does not apply to County's challenge to *22 the BLA. Because the majority concludes otherwise, I dissent.
OWENS, JOHNSON, and MADSEN, JJ., concur.
NOTES
[1] Clerk's Papers at 219.
[2] Contrary to the recorded deed, Respondents contend that James S. Kempton granted the northeast quarter to Petitioners.
[3] Clerk's Papers at 219-21.
[4] See id. at 343-44.
[5] See id. at 342-49. Boundary line adjustment number 97-154.
[6] Id. at 346.
[7] See Chelan County v. Nykreim, 105 Wash.App. 339, 20 P.3d 416 (2001).
[8] Clerk's Papers at 342-47.
[9] Id.
[10] Clerk's Papers at 244-46. Certificate of Exemption, CE 1997-7. Mr. Harrington is otherwise referred to throughout this opinion as Director of the Chelan County Planning Department.
[11] See id.
[12] John W. Harrington, Jr. stated in his declaration that "[t]here was no question whatsoever that the application of Chelan County Subdivision Resolution, Article II, Section 200, resulted in three existing legal lots or three existing building sites within the original 40 acre parcel. This was the interpretation of that ordinance during my entire tenure at Chelan County." Clerk's Papers at 188-89.
[13] See RCW 58.17.040(6); Chelan County Subdivision Resolution, Article III, Section 302.
[14] Clerk's Papers at 189.
[15] Id. at 188-89.
[16] Id.
[17] Id. at 230-35.
[18] Clerk's Papers at 44-48. Applications for CUPs: 98-13, 98-14, and 98-15.
[19] Id. at 42.
[20] Intervenor Respondents are four married couples who own property upstream from Petitioners' property: Eric Gebelein and Rebecca Waud; Joseph J. Straus and Mary Shima; Gary Kincaid and Julienne Kincaid; and David Bale and Melissa Bale.
[21] Clerk's Papers at 412-13.
[22] Id. at 427. The criteria read:

The adjustment must meet all of the following criteria:
 The adjustment does not create an additional lot, tract, parcel, site or division of land.
 The adjustment does not result in creation of any lot, tract, parcel, site or division which contains insufficient area and dimensions to meet the minimum requirements of the zone in which the lots affected are situated.
 The adjustment does not involve the relocation of building sites, existing or anticipated easements, utilities, septic tanks and drainfields or other features.
[23] See Clerk's Papers at 419-25.
[24] Id.
[25] Id. at 236.
[26] Id. at 48 (finding that the proposed project's dwelling units of 11 acres exceeded the maximum allowable density in the forest resource zoning district, one dwelling unit per 20 acres).
[27] Id. at 242.
[28] Id. at 376.
[29] Clerk's Papers at 360.
[30] Id. at 372-75.
[31] Id. at 358-59, 127-28.
[32] See Clerk's Papers at 10-13.

The court's order stated, in pertinent part, that "the proposed Boundary line Adjustment was not a minor boundary adjustment but rather a substantial change in the configuration of the property lines, and that none of the resulting parcels would comply with the 20 acre zoning density, and the Court having further determined that the Notices to Title were invalid and incapable of rectifying the improper Boundary Line Adjustment, and the Court having further found that the County's authority to revoke the Boundary Line Adjustment is not precluded based on theories of vested rights, equitable estoppel, contract or Land Use Petition Act...."
[33] Id. at 7-8.
[34] Briefs amicus curiae were filed by the Building Industry Association of Washington, the Washington Land Title Association, the Washington Association of Realtors, and the Washington State Farm Bureau.
[35] Chelan County v. Nykreim, 105 Wash.App. at 360, 20 P.3d 416.
[36] Id. at 361, 20 P.3d 416.
[37] Id. at 361-62, 20 P.3d 416.
[38] Order granting review.
[39] RCW 36.70C.010-.030.
[40] See Harris v. Hornbaker, 98 Wash.2d 650, 658 P.2d 1219 (1983); Responsible Urban Growth Group v. City of Kent, 123 Wash.2d 376, 868 P.2d 861 (1994); Chaussee v. Snohomish County Council, 38 Wash.App. 630, 689 P.2d 1084 (1984); R/L Assocs., Inc. v. Klockars, 52 Wash. App. 726, 763 P.2d 1244 (1988).
[41] RCW 36.70C.030(1) reads:

[T]his chapter does not apply:
(a) Judicial review of:
(i) Land use decisions made by bodies that are not part of local jurisdiction;
(ii) Land use decisions of a local jurisdiction that are subject to review by a quasi-judicial body created by state law, such as the shoreline hearings board or the growth management hearings board;
(b) Judicial review of applications for a writ of mandamus or prohibition; or
(c) Claims provided by any law for monetary damages or compensation....
[42] RCW 36.70C.030(1) (emphasis added).
[43] RCW 36.70C.010.
[44] RCW 36.70C.040.
[45] Br. of Pet'r at 19-22.
[46] Id.
[47] Id.
[48] Chelan County required compliance with a two step process. First, the requesting party must send a completed application to the Chelan County Planning Department with a recording fee. Second, the BLA application states, "[u]pon determination that the proposed adjustment meets the criteria in Step 1, and contains the information called for in Step 2, the form will be forwarded to the Chelan County Auditor for recordation." See Clerk's Papers at 221.
[49] Chelan County v. Nykreim, 105 Wash.App. 339, 360-61, 20 P.3d 416 (2001).
[50] Id. at 361, 20 P.3d 416 (quoting RCW 7.16.040 which reads, "A writ of review [certiorari] shall be granted by any court, except a municipal or district court, when an inferior tribunal, board or officer, exercising judicial functions, has exceeded the jurisdiction of such tribunal, board or officer, or one acting illegally, or to correct any erroneous or void proceeding, or a proceeding not according to the course of the common law, and there is no appeal, nor in the judgment of the court, any plain, speedy and adequate remedy of law").
[51] Id.
[52] Suppl. Br. of Pet'r at 11.
[53] Br. of Pet'r at 9 (citing R/L Assocs., Inc. v. Klockars, 52 Wash.App. at 729, 763 P.2d 1244; Cox v. City of Lynnwood, 72 Wash.App. 1, 11, 863 P.2d 578 (1993)).
[54] Nykreim, 105 Wash.App. at 354-55, 20 P.3d 416.
[55] R/L Assocs., Inc. v. Klockars, 52 Wash.App. at 728, 763 P.2d 1244.
[56] Id.
[57] The trial court, upon a writ of certiorari, affirmed and dismissed the writ. The Court of Appeals, Division One, affirmed.
[58] Nykreim, 105 Wash.App. at 354-55, 20 P.3d 416.
[59] Cox v. City of Lynnwood, 72 Wash.App. at 11, 863 P.2d 578.
[60] See Nolan v. Blackwell, 123 Wash. 504, 506, 212 P. 1048 (1923); Eastlake Community Council v. Roanoke Assocs., Inc., 82 Wash.2d 475, 481, 513 P.2d 36 (1973); Larsen v. Town of Colton, 94 Wash.App. 383, 973 P.2d 1066 (1999).
[61] See Nolan v. Blackwell, 123 Wash. at 506, 212 P. 1048; Eastlake Community Council v. Roanoke Assocs., 82 Wash.2d at 481, 513 P.2d 36.
[62] See Nolan v. Blackwell, 123 Wash. at 506, 212 P. 1048; Hull v. Hunt, 53 Wash.2d 125, 331 P.2d 856 (1958); Steele v. Queen City Broad. Co., 54 Wash.2d 402, 341 P.2d 499 (1959); Radach v. Gunderson, 39 Wash.App. 392, 695 P.2d 128 (1985).
[63] See Nolan v. Blackwell, 123 Wash. at 504-05, 212 P. 1048.
[64] Id.
[65] Id.
[66] Eastlake Cmty. Council v. Roanoke Assocs., 82 Wash.2d at 481-82, 513 P.2d 36.
[67] Id.
[68] See Radach v. Gunderson, 39 Wash.App. at 400, 695 P.2d 128; City of Mercer Island v. Steinmann, 9 Wash.App. 479, 513 P.2d 80 (1973).
[69] Id.
[70] Id.
[71] Nykreim, 105 Wash.App. at 362, 20 P.3d 416.
[72] Br. of Pet'r at 26-28.
[73] Nykreim, 105 Wash.App. at 362, 20 P.3d 416.
[74] Larsen v. Town of Colton, 94 Wash.App. at 385, 973 P.2d 1066.
[75] Id. at 387, 973 P.2d 1066.
[76] Id. at 388, 973 P.2d 1066.
[77] Id. at 389-90, 973 P.2d 1066 (citing RCW 36.70C.030(1), .040(3)).
[78] Id. at 390-91, 973 P.2d 1066.
[79] Id. at 392, 973 P.2d 1066.
[80] 78 Wash.App. 370, 380, 898 P.2d 319, review denied, 128 Wash.2d 1003, 907 P.2d 296 (1995).
[81] Larsen, 94 Wash.App. at 392, 973 P.2d 1066 (finding the action in Brutsche commenced 73 days after enactment of the zoning ordinances was untimely under the reasonable-time-by-analogy analysis) (quoting Brutsche, 78 Wash.App. at 376, 898 P.2d 319).
[82] Id. (citing Concerned Organized Women & People Opposed to Offensive Proposals, Inc. v. City of Arlington, 69 Wash.App. 209, 217-18, 847 P.2d 963, review denied, 122 Wash.2d 1014, 863 P.2d 73 (1993); City of Federal Way v. King County, 62 Wash.App. 530, 538, 815 P.2d 790 (1991); and Deschenes v. King County, 83 Wash.2d 714, 717, 521 P.2d 1181 (1974)).
[83] Id. at 393, 973 P.2d 1066 ("As the superior court recognized, applying Brutsche's bright-line rule to this situation would allow a landowner to avoid any judicial review by obtaining a building permit and waiting 30 days before beginning construction").
[84] Id. at 393, 973 P.2d 1066.
[85] Id.
[86] Br. of Resp't at 16-18.
[87] Larsen v. Town of Colton, 94 Wash.App. at 393, 973 P.2d 1066.
[88] Id. at 392-93, 973 P.2d 1066.
[89] See Clerk's Papers at 244, 376.
[90] Wenatchee Sportsmen Ass'n v. Chelan County, 141 Wash.2d 169, 175, 4 P.3d 123 (2000).
[91] Id. at 174, 4 P.3d 123.
[92] Id.
[93] Id. at 181-82, 4 P.3d 123. The 1998 plat application conformed to the zoning requirements notwithstanding the rezone approval later characterized as improper.
[94] Id. at 180-82, 4 P.3d 123 (citations omitted).
[95] Id. at 181, 4 P.3d 123.
[96] Id.
[97] State v. Johnson, 104 Wash.2d 179, 181, 703 P.2d 1052 (1985).
[98] State v. Chapman, 140 Wash.2d 436, 450, 998 P.2d 282 (2000) (citing State v. Chester, 133 Wash.2d 15, 21, 940 P.2d 1374 (1997)).
[99] State ex rel. Madden v. Public Utility Dist. No. 1 of Douglas County, 83 Wash.2d 219, 222, 517 P.2d 585 (1973) (citation omitted).
[100] Geschwind v. Flanagan, 121 Wash.2d 833, 841, 854 P.2d 1061 (1993) (citing State v. Pike, 118 Wash.2d 585, 591, 826 P.2d 152 (1992)).
[101] Nykreim, 105 Wash.App. at 361, 20 P.3d 416.
[102] RCW 36.70C.020(1) (emphasis added).
[103] In 2000 Chelan County amended the Subdivision Resolution to establish clear procedures for application, review, consideration, and appeals of BLA. Now appeals under Section 980 provides for quasi-judicial review of an administrator's decision to the Chelan County Hearing Examiner within 21 days from the date of the written decision. It limits standing to the applicant, the owner of the property on which the subdivision is proposed, any owner entitled to special notice under RCW 58.17.090, or any aggrieved property owner who will suffer direct or substantial impacts from the proposed short division. See Chelan County Resolution Number 2000-128 amended by Resolution Number 2000-200 (Dec. 26, 2000).
[104] Section 200 reads: "Land, as a unit for determining subdivision, means all contiguous real property in one ownership, but not including parcels of record prior to the adoption of this ordinance and not including parcels separated by a public road or stream in excess of 20 cubic feet per second mean annual flow. A parcel shall be considered of record if recorded in the office of the Chelan County Auditor and if the disposition of said parcel is in conformance to the subdivision regulation in force at the time of the filing."
[105] Chelan County Code required property owners to proceed under Subdivision Resolution, Article I, Section 100, when dividing land into two or more parcels or tracts in the unincorporated areas of Chelan County. RCW 58.17.040(6) provides: "A division made for the purpose of alteration by adjusting boundary lines, between platted or unplatted lots or both, which does not create any addition lot, tract, parcel, site, or division nor create any lot, tract, parcel, site, or division which contains insufficient area and dimension to meet minimum requirements for width and area for building site[.]" (Emphasis added.)

Similar to RCW 58.17.040, Section 302 exempted BLA between lots from subdivision laws. Section 302 adopted the definition of "lot" contained in RCW 58.17.020(9):"[A] fractional part of divided lands having fixed boundaries, being of sufficient area and dimension to meet minimum zoning requirements for width and area. The term shall include tracts or parcels." Article II, Section 200 of the Chelan County Subdivision Resolution used the same definition.
[106] Nykreim, 105 Wash.App. at 350, 20 P.3d 416.
[107] Id.
[108] RCW 36.70C.130(1)(d).
[109] RCW 36.70B.020(4) (emphasis added).
[110] See State ex rel. Craven v. City of Tacoma, 63 Wash.2d 23, 385 P.2d 372 (1963); Mission Springs, Inc. v. City of Spokane, 134 Wash.2d 947, 960-61, 954 P.2d 250 (1998).
[111] Ch. 7.16 RCW.
[112] State ex rel. Madden v. Pub. Util. Dist. No. 1 of Douglas County, 83 Wash.2d 219, 222, 517 P.2d 585 (1973).
[113] Id.
[114] BLACK'S LAW DICTIONARY 673 (4th ed.1968) (defining exclusive as "[a]ppertaining to the subject alone, not including, admitting, or pertaining to any others").
[115] Br. of Resp't at 14-15.
[116] Skamania County v. Columbia River Gorge Comm'n, 144 Wash.2d 30, 49, 26 P.3d 241 (2001); Wenatchee Sportsmen Ass'n v. Chelan County, 141 Wash.2d 169, 175, 4 P.3d 123 (2000); Deschenes v. King County, 83 Wash.2d 714, 716, 521 P.2d 1181 (1974).
[117] Skamania County v. Columbia River Gorge Commission, 144 Wash.2d at 49, 26 P.3d 241, (alterations in original) (quoting Deschenes v. King County, 83 Wash.2d at 716-17, 521 P.2d 1181).
[118] Wenatchee Sportsmen Ass'n v. Chelan County, 141 Wash.2d at 181-82, 4 P.3d 123.
[119] RCW 36.70C.010 (emphasis added).
[120] See id.
[121] Br. of Amici Curiae of Building Industry Association of Washington, Washington Land Title Association, Washington Association of Realtors, and Washington State Farm Bureau at 11-12.
[122] West Main Assocs. v. City of Bellevue, 106 Wash.2d 47, 51, 720 P.2d 782 (1986).
[123] RCW 36.70C.060 (emphasis added).
[124] Br. of Resp't at 20-21.
[125] RCW 36.70C.020(3).
[126] RCW 36.70C.060(2).
[127] Suquamish Indian Tribe v. Kitsap County, 92 Wash.App. 816, 828, 965 P.2d 636 (1998).
[128] Id. at 829, 965 P.2d 636 (RCW 34.05.530).
[129] Id.
[130] Id. at 829-30, 965 P.2d 636.
[131] Id. at 832, 965 P.2d 636.
[132] Biermann v. City of Spokane, 90 Wash.App. 816, 820, 960 P.2d 434 (1998), review denied, 137 Wash.2d 1004, 972 P.2d 466 (1999) (citing Vovos v. Grant, 87 Wash.2d 697, 699, 555 P.2d 1343 (1976)).
[133] Intervenor Plaintiffs' Reply in Support of Plaintiff's Motion for Partial Summary Judgment at 3.
[134] Biermann v. City of Spokane, 90 Wash.App. at 820, 960 P.2d 434 (finding a sufficient interest to merit standing where Appellant's health, safety and comfort were directly affected by proposed construction of garage).
[135] Skamania County v. Columbia River Gorge Comm'n, 144 Wash.2d 30, 26 P.3d 241 (2001).
[136] Id. at 43-45, 26 P.3d 241. See 16 U.S.C. § 544.
[137] Id. at 48-50, 26 P.3d 241.
[138] The director's decision was entered on May 19, 1997. On July 27, 1998 the Gorge Commission ordered the County to resolve the violation.
[139] Id. at 47, 26 P.3d 241.
[140] Petitioners' property lies in the Forest Resource Zoning District. The resulting lots created by the proposed BLA was less than the minimum lot size, 20 acres as required by the Forest Resource district.
[141] See Seattle Bldg. & Constr. Trades Council v. Apprenticeship & Training Council, 129 Wash.2d 787, 797, 920 P.2d 581 (1996).
[142] Id. at 797, 920 P.2d 581 (citing Clarke v. Sec. Indus. Ass'n, 479 U.S. 388, 399, 107 S.Ct. 750, 757, 93 L.Ed.2d 757 (1987)).
[143] Id. (citing St. Joseph Hosp. v. Dep't of Health, 125 Wash.2d 733, 739-40, 887 P.2d 891 (1995)).
[144] A BLA application was approved after the Planning Director was satisfied that all BLA criteria were met, including compliance with all requirements and regulations of the Zoning Code of Chelan County. Clerk's Papers at 243-44, 427.
[145] RCW 36.70C.060(2)(d); Ward v. Board of County Comm'rs, 86 Wash.App. 266, 270-71, 936 P.2d 42 (1997).
[146] RCW 36.70C.020(1); Estate of Friedman v. Pierce County, 112 Wash.2d 68, 79, 768 P.2d 462 (1989).
[147] Ward v. Board of County Comm'rs, 86 Wash. App. at 271, 936 P.2d 42 (citing South Hollywood Hills Citizens v. King County, 101 Wash.2d 68, 73, 677 P.2d 114 (1984)).
[1] The approximate sizes of "old" parcels A, B, and C were 33.5 acres, 4 acres, and 2.5 acres, respectively. CP at 393
[2] The approximate sizes of Nykreim's "new" parcels A, B, and C are 18.5 acres, 10.7 acres and 10.7 acres, respectively. CP at 394.
[3] RCW 58.17.010 states in relevant part that "the process by which land is divided is a matter of state concern and should be administered in a uniform manner by cities, towns, and counties throughout the state." Pursuant to RCW 58.17.040(6), the Chelan County Code specifically exempts BLAs from the subdivision requirements under certain conditions. See CHELAN COUNTY CODE 12.36.010(a).
[4] RCW 58.17.040(6) sets forth exemptions for BLAs from subdivision regulations and requirements. It states that requirements of chapter 58.17 RCW do not apply to "[a] division made for the purpose of alteration by adjusting boundary lines, between platted or unplatted lots or both, which does not create any additional lot, tract, parcel, site, or division nor create any lot, tract parcel, site, or division which contains insufficient area and dimension to meet minimum requirements for width and area for a building site."
[5] Chapter 58.17 RCW vests local authorities with the power to establish their own procedures for review of boundary line adjustments. During the relevant period, County adopted no defined review procedures, e.g., notice or hearing requirements, with regard to its BLA decisions.
[6] LUPA contains a 21-day limitation period from the date of issuance in which to appeal land use decisions. RCW 36.70C.040(3).
[7] Under LUPA, standing to bring a land use petition is limited to the applicant or property owner to whom the land use decision is directed or to a person aggrieved or adversely affected by the land use decision. Pursuant to that statute,

"[a] person is aggrieved or adversely affected ... when all of the following conditions are present:
"(a) The land use decision has prejudiced or is likely to prejudice that person;
"(b) That person's asserted interests are among those that the local jurisdiction was required to consider when it made the land use decision;
"(c) A judgment in favor of that person would substantially eliminate or redress the prejudice to that person caused or likely to be caused by the land use decision; and
"(d) The petitioner has exhausted his or her administrative remedies to the extent required by law." RCW 36.70C.060(2).
[8] An intervenor is "as much a party to the action as the original parties, and renders himself vulnerable to complete adjudication of the issues in litigation between himself and the adverse party." 59 Am.Jur.2d Parties § 170 (1987) (footnotes omitted). However, final adjudication of an intervenor's legal rights may depart from those of the original parties. 59 Am.Jur.2d Parties § 174 (1987).
[9] Applying LUPA to this case raises due process concerns by denying Neighbors, as adversely affected property owners, an opportunity to assert their interests. See, e.g., Larsen v. Town of Colton, 94 Wash.App. 383, 973 P.2d 1066 (1999).
[10] See Larsen, 94 Wash.App. at 391, 973 P.2d 1066 (interests of adjacent property owners are not intended or required to be considered by the City in issuing building permits); see also RCW 36.70C.060.