IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| JODI VAN, individually and as a Trustee of the Van Living Trust, and BRIAN VAN,<br><br>               Petitioners,<br><br>        v.<br><br>CITY OF BURIEN, a Washington municipal corporation,<br><br>               Respondent. | No. 85077-6-I<br><br>DIVISION ONE<br><br>ORDER DENYING MOTION TO PUBLISH, GRANTING RESPONDENT'S MOTION FOR LIMITED RECONSIDERATION, AND AMENDING OPINION |

Respondent city of Burien filed a motion to publish and for limited reconsideration of the opinion filed on August 19, 2024 in the above case. A majority of the panel has determined that Respondent's motion to publish should be denied. The panel has also determined that Respondent's motion for limited reconsideration shall be granted and the above-mentioned opinion amended to correct citations to reflect the ordinance in effect at the relevant time. Now, therefore, it is hereby

ORDERED that Respondent's motion to publish is denied.

It is also hereby

ORDERED the Respondent's motion for limited reconsideration is granted and the above-mentioned opinion filed on August 19, 2024 shall be amended as follows:

1. On Pages 12-13, the following sentences:

   BMC 15.05.285 provides one means of ensuring that permits comply with all required laws and regulations:

   > (1) The issuance or granting of a permit shall not be construed as a permit for, or an approval of, any violation of this chapter, construction codes, or of any other Burien ordinance.

   > (2) Permits presuming to give authority to violate or cancel the provisions of any portion of the construction codes, other Burien ordinances, or any federal, state, or county guideline . . . shall not be valid . . . . This section shall be applied, implemented and interpreted consistent with the statutes and court decisions of the state of Washington.

   shall be deleted and replaced with the following:

   Former BMC 15.05.285 (2016) provides one means of ensuring that permits comply with all required laws and regulations:

   > The issuance or granting of a permit shall not be construed to be a permit for, or an approval of, any violation of any of the provisions of this chapter or the construction codes or of any other ordinance of the city. Permits presuming to give authority to violate or cancel the provisions of this code or the construction codes or other ordinances of the city shall not be valid. . . . This section shall be applied, implemented and interpreted consistent with the statutes and court decisions of the state of Washington.

2. On Page 13, the following sentences:

   > The building official may suspend or revoke a permit issued under the provisions of this code, whenever the permit is issued in error or based on or in reliance on the information. . . that is incorrect, inaccurate . . . or incomplete information, or when the permit violates

or permits a violation of any Burien ordinance, requirement, or regulation, or any federal, state, or county guideline . . . . This section shall be applied, implemented, and interpreted consistent with the statutes and court decisions of the state of Washington.

BMC 15.05.300.

shall be deleted and replaced with the following:

The building official is authorized to suspend or revoke a permit issued under the provisions of this code, whenever the permit is issued in error or on the basis of incorrect, inaccurate or incomplete information, or when the permit is in violation of any ordinance or regulation or any of the provisions of this code. This section shall be applied, implemented and interpreted consistent with the statutes and court decisions of the state of Washington.

Former BMC 15.05.300 (2016).

The remainder of this opinion shall remain the same.

FOR THE COURT:

_____

Chung, J.

Judge

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| JODI VAN, individually and as a Trustee of the Van Living Trust, and BRIAN VAN,<br><br>             Petitioners,<br><br>           v.<br><br>CITY OF BURIEN, a Washington municipal corporation,<br><br>           Respondent. | No. 85077-6-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

CHUNG, J. — Jodi Van obtained a shoreline exemption from the City of Burien to repair a dilapidated garage and deck. Then, when she applied for a building permit, she altered her plan to include replacement of the existing structures. The City issued a building permit, but later, upon inspection, because the project exceeded the shoreline exemption, the City suspended the permit and issued a stop work order (SWO). Van appealed to the City's hearing examiner, who upheld the suspension and SWO. Van filed this petition under the Land Use Petition Act (LUPA), chapter 36.70C RCW, arguing that because the City failed to properly file a LUPA petition to suspend her building permit, her permit is final and binding. We conclude the City was not required to file a LUPA petition because local ordinances reserve to the City the ability to suspend or revoke an erroneously issued permit. Therefore, we affirm the decision of the hearing examiner.

FACTS

Jodi Van owns waterfront property on Puget Sound in Burien, WA. The shoreline properties in that area are bisected by the 80-foot-wide SW 172nd Street right-of-way, with residential development north and landward of the street and accessory structures and parking on the unimproved right-of-way waterward of the street. Between the shoreline and the street, Van's property housed a garage structure, uncovered wooden deck, and vehicle parking. The garage and deck were rotting, and Van wanted to repair them.

On June 24, 2020, Van spoke with Burien City Planner Chad Tibbits about possible repair or replacement of the existing garage and deck. Tibbits sent an e-mail to Van summarizing their conversation, describing the proposal as a request to "[r]ebuild existing shed and deck (rotted deck recently removed for safety reasons)." He explained to Van that rebuilding the garage and deck would require a shoreline exemption permit, a floodplain permit with a floodplain habitat assessment prepared by a wetland biologist, a geotechnical report, a building permit, and a right-of-way permit due to the property's location within a floodplain, a seismic hazard zone, and the SW 172nd Street right-of-way. Tibbits also noted that work performed waterward of the Puget Sound high water mark may require additional approvals and permits from agencies such as the Washington State Department of Fish and Wildlife.

Van applied for a shoreline exemption on July 7, 2020. She described the project as "repair existing garage and replace existing deck to provide a safe environment for my family," and requested an exemption under WAC 173-27-

040(2)(b), which allows for "normal maintenance or repair of existing structures or developments." The application included a site plan drawing showing the location of the existing garage and deck. As a City planner, Tibbits was responsible for reviewing Van's application for a shoreline exemption. Tibbits confirmed that the project fell within the City's shoreline jurisdiction and reviewed the project application for possible adverse impacts to the shoreline. Tibbits determined that "the project involved repairing the existing garage structure and replacing the existing deck structure with 'like' structures," and "did not appear to impair ecological functions or processes of the shoreline." He concluded "[t]he proposal to repair the existing garage and replace the existing deck within the current footprint is considered normal maintenance and repair, therefore the proposal is exempt from obtaining a substantial shoreline development permit." Further, "[t]he proposal is consistent with the Burien Shoreline Master Program and achieves the policy goal of no net loss of ecological functions or values because there will be no change to the beach." Tibbits conditionally granted the permit subject to securing a building permit "for the work proposed to the existing Garage structure," disposing or recycling all debris from the project, providing erosion control fencing around the work site to prevent sediment or materials from entering Puget Sound, and calling the planner for site inspection of installed vegetation after completion of the work.

After securing the shoreline exemption, Van and her uncle, Brian Van, an experienced builder, communicated with Building Official Steven Blake and learned that to obtain a building permit they would be required to repair the garage

up to the code requirements, which would necessitate new materials and a new foundation. As a result, the Vans concluded that repair of the garage was impossible and they needed to replace the entire structure. Brian had a plan and engineering drawn up for a detached garage, using the City's website example schematic as the model.

On November 17, 2020, Van submitted a building permit, describing the project as "Shoreline exemption to update existing garage and deck to provide a safe environment for my family." She included detailed construction plans, showing that the existing garage and deck would be replaced with a new garage with a covered porch supported by a new concrete foundation. The City's planning division reviewed the application and requested additional information, including a site plan with dimensions to property lines and existing structures, an erosion and sediment control plan, and a project description of the deck. In response, Van provided site drawings, a description of the erosion control, and an explanation that the covered porch would be on the same footprint as the deck they had removed for safety.

On December 7, 2020, Tibbits approved the plans on behalf of the City Planning Division. The City Building Department approved the permit on December 11, 2020. Development applications for construction of new structures are normally reviewed by the Public Works Department. Van's permit application was not routed to the Public Works Department for review, as the Building Department originally understood the project as a repair of an existing structure

4

rather than construction of a new structure in the same location. Building Permit BLD-20-2366 was issued on December 14, 2020.

In late December 2020 and January 2021, Van began working on the project, disposing of rotten portions of the garage and moving a small part of the old garage to store tools. The project passed its erosion control inspection as well as inspection of the footings and setback. On February 1, 2021, the concrete for the footings and half of the foundation was poured, with the remainder scheduled for February 6. Due to a neighbor complaint, the building inspector visited on February 3 and requested reduction of the proposed roof overhang to prevent encroachment on the neighboring property. At that time, the building inspector became concerned about the extent of the project with respect to its shoreline exemption. He raised the issue with his direct supervisors and Tibbits and was subsequently directed to post a SWO on the property.

The building inspector posted the SWO on February 5, 2021. That same day, Building Official Blake issued a revocation of the building permit, explaining that approval of the shoreline exemption "was based on a repair of an existing structure. It has come to my attention that the existing structure has been completely removed and a new structure will be built in its place. This is in violation of other ordinances and regulations regulated by the City of Burien."

Van filed an appeal of the suspension and SWO with the City of Burien hearing examiner. The City subsequently agreed to rescind the revocation of the building permit and issue a notice of intention to revoke. Blake sent a letter to that effect, suspending the building permit for 30 days, after which it would be revoked

5

unless Van appealed. The letter explained that the project "is not exempt from the shoreline permit requirement and will also require a right-of-way permit." Van filed an amended notice with the hearing examiner.

Van and the City both filed dispositive motions with the hearing examiner. Van argued that because the building permit was not appealed, it was final and conclusive and any challenge to the permit was untimely under LUPA. The City requested that the hearing examiner deny the appeal because issuance of a building permit is not a final land use decision subject to LUPA, and the project was not exempt from shoreline permit or public street right-of-way permits. The hearing examiner denied both requests for summary judgment.[1]

The hearing examiner conducted a hearing with testimony from all parties, including the Vans and Tibbits. The hearing focused on two issues: (1) whether the City improperly suspended the building permit and issued the SWO when Van had obtained the necessary permits and approvals for her project, and (2) whether the City was estopped from suspending the permit because it was aware of the project details when issuing the permit. At the conclusion of the hearing, the hearing examiner determined that the municipal code and legal precedent supported the SWO and suspension of the building permit. According to the hearing examiner, Van did not purposefully misrepresent her intentions throughout the permitting process. The change in scope of her project from repair to replace "was clear in the plans submitted for building permit review." The hearing examiner

---

[1] Van also raised due process concerns, alleging the SWO and suspension of the building permit without notice and opportunity to be heard violated due process. The hearing examiner granted Burien's motion for summary judgment dismissing any such constitutional claims due to lack of authority to decide those issues.

found "mistakes were made" and the City failed to notice the significant change between request for a shoreline exemption to repair and a building permit to replace the structure. However, the hearing examiner concluded that Burien Municipal Code (BMC) 15.05.300 "unambiguously vests the City with 'do-over' authority in circumstances like these such that it may suspend a building permit when such permit was issued in error or on the basis of incorrect, inaccurate, or incomplete information." Additionally, the hearing examiner found Van "was put on notice from the very outset of the project in June 2020, that additional permits/review (including a right-of-way permit and floodplain review) would be necessary to replace the garage structure." The hearing examiner denied Van's appeal, upholding the SWO and suspension of the building permit pending further review of the project with respect to the shoreline, floodplain, right-of-way, and other code requirements.

Van filed a land use petition under LUPA with the King County Superior Court. The parties agreed to transfer the matter from superior court directly to this court under RCW 36.70C.150(1).

## DISCUSSION

The sole issue before this court is whether the City was required to file a LUPA petition in order to suspend Van's building permit and issue the SWO.

LUPA is the exclusive means of judicial review of land use decisions.[2] RCW 36.70C.030(1); see Habitat Watch v. Skagit County, 155 Wn.2d 397, 407, 120 P.3d

---

[2] The parties do not dispute that the building permit was a land use decision. RCW 36.70C.020(2) provides the following definition:

56 (2005). LUPA was established to create "uniform, expedited appeal procedures and uniform criteria" for reviewing land use decisions "in order to provide consistent, predictable, and timely judicial review." RCW 36.70C.010. To this end, LUPA requires that an appeal of a land use decision must be filed within 21 days of issuance of the decision. RCW 36.70C.040(3). The procedural requirements, including this time limitation, must be strictly met before a trial court's appellate jurisdiction under LUPA is properly invoked. <u>Citizens to Preserve Pioneer Park, LLC v. City of Mercer Island</u>, 106 Wn. App. 461, 467, 24 P.3d 1079 (2001). If a claim is not filed within 21 days after a land use decision is issued, it is barred, and the court may not grant review. RCW 36.70C.040(2). The land use decision becomes valid once the opportunity to challenge it has passed. <u>Wenatchee Sportsmen Ass'n v. Chelan County</u>, 141 Wn.2d 169, 181, 4 P.3d 123 (2000).

---

"Land use decision" means a final determination by a local jurisdiction's body or officer with the highest level of authority to make the determination, including those with authority to hear appeals, on:

(a) An application for a project permit or other governmental approval required by law before real property may be improved, developed, modified, sold, transferred, or used, but excluding applications for permits or approvals to use, vacate, or transfer streets, parks, and similar types of public property; excluding applications for legislative approvals such as area-wide rezones and annexations; and excluding applications for business licenses;

(b) An interpretative or declaratory decision regarding the application to a specific property of zoning or other ordinances or rules regulating the improvement, development, modification, maintenance, or use of real property; and

(c) The enforcement by a local jurisdiction of ordinances regulating the improvement, development, modification, maintenance, or use of real property. However, when a local jurisdiction is required by law to enforce the ordinances in a court of limited jurisdiction, a petition may not be brought under this chapter.

Where a local jurisdiction allows or requires a motion for reconsideration to the highest level of authority making the determination, and a timely motion for reconsideration has been filed, the land use decision occurs on the date a decision is entered on the motion for reconsideration, and not the date of the original decision for which the motion for reconsideration was filed.

Van argues that the hearing examiner erred by upholding the City's suspension of the building permit and SWO because approval of the permit "was not timely challenged and thus was final, binding, and conclusive under the Land Use Petition Act, chapter 36.70C RCW."[3] The City argues it has broad and ongoing authority to regulate permitted construction work that is not abrogated by LUPA. We agree with the City.

To support her claim that LUPA's 21-day timeline applies to her building permit, Van relies on Chelan County v. Nykreim, 146 Wn.2d 904, 52 P.3d 1 (2002). In Nykreim, three couples acquired a large property as tenants in common and filed an application for a boundary line adjustment (BLA) with Chelan County. 146 Wn.2d at 909. The BLA application included the legal descriptions indicating that the property consisted of three existing parcels. Id. The owners sought to revise the boundary lines to form three rectangular lots with parallel boundaries. Id. at

---

[3] Generally, to obtain relief from a final land use decision, the petitioner must establish one of the standards in RCW 36.70C.130(1):

(a) The body or officer that made the land use decision engaged in unlawful procedure or failed to follow a prescribed process, unless the error was harmless;
(b) The land use decision is an erroneous interpretation of the law, after allowing for such deference as is due the construction of a law by a local jurisdiction with expertise;
(c) The land use decision is not supported by evidence that is substantial when viewed in light of the whole record before the court;
(d) The land use decision is a clearly erroneous application of the law to the facts;
(e) The land use decision is outside the authority or jurisdiction of the body or officer making the decision; or
(f) The land use decision violates the constitutional rights of the party seeking relief.

We review the factual findings for substantial evidence and conclusions of law de novo. Wenatchee Sportsmen, 141 Wn.2d at 176. However, Van only challenges the City's action on her building permit as untimely and argues this untimeliness results in a permit that is conclusively valid.

910. Approval of a BLA required that the lot line adjustment would not create new lots. Id. at 912. The administrator of the Chelan County planning department determined that the original property was divided into three existing legal lots due to the location of a creek and a road, and, therefore, the BLA application did not create additional lots. Id. at 911-12. The administrator approved the BLA, signing a certificate of exemption and attaching a copy of the new legal descriptions of the three parcels. Id. at 911. The owners applied for conditional use permits to build three single-family homes on the property. Id. at 912. After complaints and concerns by neighbors, the Chelan County planning department reviewed and effectively revoked the BLA. Id. at 913. More than a year after initial approval of the BLA, Chelan County filed a complaint with the superior court seeking declaratory judgment on the propriety of the BLA. Id. at 914. The court determined that Chelan County properly exercised its authority to revoke the erroneously approved BLA. Id. at 915. This court affirmed, concluding that LUPA did not bar Chelan County's action challenging the validity of its own BLA decision, and LUPA applied only to "quasi-judicial decisions." Id. at 916.

The Washington Supreme Court disagreed with the Court of Appeals, stating that based on the existing statute, "*Building permits* are subject to judicial review under LUPA." Nykreim, 146 Wn.2d at 929. Chelan County failed to timely file a LUPA petition to challenge the erroneously granted BLA and the action was, therefore, time-barred. Id. at 940. Van relies on this reasoning to support her claim that the City's decision to grant her building permit was subject to LUPA, the City was required to timely file a LUPA petition to alter her permit, and the City's failure

10

to do so means that her building permit was final and conclusive after the 21-day appeal period had passed.

However, Nykreim provides further guidance on the requirements for a petition under LUPA:

> To have standing to bring a petition under LUPA, a party must exhaust administrative remedies. The appeal must be from a final governmental decision. . . Under Chelan County procedures for approval of a BLA, Mr. Harrington, Planning Director, served as the decision maker with authority to make a final determination. His approval of Petitioners' BLA was not administratively appealable. Thus any administrative remedies available to Chelan County were 'exhausted' because there was nothing from which an administrative appeal could be taken.

146 Wn.2d at 938. In Nykreim, other than a LUPA petition, Chelan County had no recourse to address the improperly issued BLA. "Prior to amendment of Chelan County's current Subdivision Resolution, there were no clearly defined procedures for consideration and review of BLA decisions," and the administrator was the highest authority to make a final determination on the BLA application. 146 Wn.2d at 927. LUPA was the only means of challenging the BLA.

In contrast to Chelan County's limited recourse for its BLA decisions, here, the BMC provides the City with ongoing authority to amend decisions such as building permits. Van initially applied to the City for an exemption from the shoreline substantial development permit under WAC 173-27-040(2)(b), which allows for "normal maintenance or repair of existing structures or developments."[4]

---

[4] Washington's Shoreline Management Act of 1971 "incorporates state and local requirements to protect the state's shoreline." May v. Robertson, 153 Wn. App. 57, 74, 218 P.3d 211 (2009). Acknowledging that "unrestricted construction on the privately owned or publicly owned shorelines of the state is not in the best public interest," the legislature required local governments to develop a master program for regulating shoreline use. RCW 90.58.020(1); May,

The City granted this exemption and then granted Van's building permit subject to the shoreline exemption and pursuant to its permitting authority under BMC 15.05.275.

BMC 15.05.275 requires the City to review and act on permit applications. The ordinance also provides as follows:

> Notwithstanding the language of this section or any other provision of this code, no building permit shall be issued until all other project permits related to the project action for which the building permit is sought have been approved and issued and all related fees, bonds, and approval conditions have been paid and/or satisfied . . . .

Van claims that this provision of BMC 15.05.275 ensures that her permit "is the final step in the permitting process; the various permits and approvals that the City demands from Van are by law preliminary to the building permit; the City can't demand additional applications now." According to Van, "she has a vested right to proceed with development in accordance with the permit's terms, even if other permits should have been obtained previously and even if the building permit was issued in error." Essentially, she argues that the City's issuance of the permit necessarily means she complied with all requirements regardless of whether she had in fact complied. However, the City's municipal code acknowledges the potential for error and includes safeguards for the permitting process.

BMC 15.05.285 provides one means of ensuring that permits comply with all required laws and regulations:

---

153 Wn. App. at 74; RCW 90.58.080(1). Shoreline development approval was thus delegated to local governments. RCW 90.58.140(3).

BMC Chapter 20.35 establishes the City's program for the administration and enforcement of its shoreline permit procedures and requires a shoreline substantial development permit unless a project is exempt. BMC 20.35.010.

(1) The issuance or granting of a permit shall not be construed as a permit for, or an approval of, any violation of this chapter, construction codes, or of any other Burien ordinance.

(2) Permits presuming to give authority to violate or cancel the provisions of any portion of the construction codes, other Burien ordinances, or any federal, state, or county guideline . . . shall not be valid . . . . This section shall be applied, implemented and interpreted consistent with the statutes and court decisions of the state of Washington.

Under this provision, even if the City approves a permit, that permit is invalid if it conflicts or violates any codes, ordinances, or statutes. Additionally, a City building official can take corrective action in the case of an improperly granted permit.

The building official may suspend or revoke a permit issued under the provisions of this code, whenever the permit is issued in error or based on or in reliance on the information. . . that is incorrect, inaccurate . . . or incomplete information, or when the permit violates or permits a violation of any Burien ordinance, requirement, or regulation, or any federal, state, or county guideline . . . . This section shall be applied, implemented, and interpreted consistent with the statutes and court decisions of the state of Washington.

BMC 15.05.300. These ordinances together provide the City with ongoing authority to oversee the permitting process in order to remedy the exact kind of scenario as in this case.

The City issued Van's building permit without adequate examination of the project and assessment of the required permits. Thus, the permit was "issued in error" and the City building official had the authority under BMC 15.05.300 to suspend or revoke the building permit. To the extent that Van's permit fails to comply with shoreline management, floodplain, right-of-way or any other regulations, it is not valid and may be revoked or suspended. BMC 15.05.285; BMC 15.05.300. Upon discovering that Van's project exceeded the scope of the

shoreline exemption and possibly required additional permits to comply with various regulations, the City exercised its continuing authority over the permitting process to suspend the project in order to obtain compliance.

Because BMC 15.05.285 and .300 reserve to the City the ability to suspend or revoke a permit, Van's reliance on Nykreim and related case law is misplaced. The cases do not provide guidance on the application of LUPA when a local jurisdiction has retained its oversight of building permits and, therefore, do not restrict the City's ability to act according to BMC 15.05.285 and .300.

Rather than requiring *a permitting authority* to revisit its own decisions through a LUPA petition, all of the cases cited by Van concern challenges by *a third party* to a land use decision. In James v. Kitsap County, 154 Wn.2d 574, 584-86, 115 P.3d 286 (2005), the court determined that the imposition of impact fees as a condition on the issuance of a building permit is a land decision subject to LUPA. However, James involved a challenge to the impact fee condition on building permits by the developers of the land, rather than the local jurisdiction. 154 Wn.2d at 577. The court had no reason to consider whether the local entity had continuing authority over issuance of the building permit. Habitat Watch addressed a citizen group's failure to timely oppose extensions of a special use permit for a golf club rather than a local administration's revocation of the permit. 155 Wn.2d at 400. Similarly, Wenatchee Sportsmen considered a citizen group's challenge to Chelan County's approval of a residential development project. 141 Wn.2d at 172. The court determined the developer's application complied with the applicable zoning ordinances and the association's failure to file a timely LUPA

petition barred a collateral challenge to the underlying rezone. Id. at 180-81. And in Twin Bridge Marine Park, LLC v. Department of Ecology, 162 Wn.2d 825, 829, 175 P.3d 1050 (2008), the Department of Ecology issued fines to a marina built after county approval of building permits. The court determined that Ecology was required to file a LUPA petition to pursue a collateral attack of the county building permits. Id. All of these cases concern a third-party challenge to a local land use decision. They do not stand for the proposition that a local jurisdiction with continuing authority over its permitting process must file a LUPA petition to challenge a permit it issued and, thus, do not compel the process argued by Van.

Under BMC 15.05.300, the City has authority to monitor compliance and suspend building permits issued in error without resort to LUPA. Van has not provided any additional argument as to why the hearing examiner's decision was incorrect. Therefore, we affirm the hearing examiner's denial of Van's challenge to the suspension of her permit and accompanying SWO.

_____
Chung, J.

WE CONCUR:

_____
Díaz, J.

_____
Hazelrigg, ACJ

15